Laub's Expense Account.

514

Before KELLER,
P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES,
HIRT and KENWORTHEY, JJ.

A decree was entered by the majority of the court,
SHULL, P. J., specially presiding, and MCCLUSKEY, P. J.
and BARTHOLD, J.; BARTHOLD, J., filed a dissenting
opinion, as follows:

With all due deference to the majority of the Court,
the following dissenting opinion is filed in order to clar-
ify my dissent from the Order and Decree entered by
the majority of the Court in the above entitled case.

This matter came before the Court en Banc upon
exceptions to the Report of the Auditor. In his Report,
the Auditor made no findings of fraud or corruption in
the election and did not recommend the certification of
any of the items in Judge LAUB'S account either to the
District Attorney of Northampton County or to the
Attorney General of the Commonwealth of Pennsyl-
vania. He did, however, impose the costs of the audit
upon Judge LAUB because he concluded that the audit
of the expense account was justified by the character
of the account as filed.

The majority of the Court likewise made no findings
of fraud or corruption in the election, but certified cer-
tain items in the Election Expense Account of Judge
HERBERT F. LAUB to the District Attorney of Northamp-
ton County and certain others to the Attorney General
of the Commonwealth of Pennsylvania upon the theory,
as stated in the majority opinion, that "Under the pro-

visions of the Act of 1937 ......, it becomes the duty of the Court to certify to the District Attorney the violation of any of the provisions of the Act of 1937 whether they relate to receipts, expenditures or accounting as provided by the Act, and it likewise becomes the duty of the Court to certify to the Attorney General of the Commonwealth the acceptance of contributions, the incurring of any expense, or the disbursing of any money in contravention of the Act, either directly by the candidate, through the treasurer of a committee, or through any other person with the knowledge and consent of the candidate, whether expressly authorized or not."

The Order and Decree of the majority of the Court certified the following four items to the District Attorney of Northampton County:

"(a) This accountant did not account for petty expenses, such as postage, telephone calls, gasoline, oil, and meals while campaigning, though the evidence taken at the Audit discloses that such expenses were incurred;

"(b) The payment, or payments, by this accountant to Joseph Prendergast in cash, accounted for as a payment of twenty dollars cash without a 'bill stating the payment and a receipt,' as required by the Act of Assembly, being attached to the account;

"(c) Payments made by Raymond C. Weber to Joseph Stacer, of ten dollars, to Charles Zittler, of ten dollars, to Fred Funk, of ten dollars, and to Anthony Muratore, of twenty dollars, for which there was attached to the account what purported to be receipts of such parties but which, in fact, had not been signed by them, and which receipts did not state the payment as required by the Act of 1937;

"(d) The payment of one hundred dollars to George F. Coffin, Jr., as shown by the account, without attaching to the account 'bill stating the payment and a receipt' of William F. Martin for sixty dollars and of

Ike Thomas for forty dollars, as required by the Act of 1937."

The first item deals with Judge LAUB'S failure to account for petty expenses such as postage, telephone calls, gasoline, oil and meals while campaigning. I am of the opinion that the Legislature did not contemplate that personal expenses such as those above enumerated should be included in an election expense account. Under the term "election expenses" are included all expenditures of money or other valuable things "in furtherance of or in respect to the election": Section 1601 (e) (25 P. S. 3221). The Code further provides that the candidate shall file "a full, true and detailed account, ...... setting forth each and every sum of money ...... disbursed by him for primary or election expenses, the date of each ...... disbursement, the name of the person ...... to whom paid and the specific object or purpose for which the same was disbursed": Section 1607 (a) (25 P. S. 3227). If personal expenses were within the intent of the Legislature, it would be practically impossible to comply with the above mandates of the law. This is especially true where, as here, Judge LAUB had his personal campaign headquarters in his office, in which, as a lawyer, he maintained a telephone and a stenographer. The logical result of the contention that such expenses must be included would require the account to include a proportionate share of office rent, telephone, gasoline, postage, stationery and supplies. It is fundamental that the Legislature does not intend a result that is absurd, impossible of execution or unreasonable. Furthermore, the Code does not make it a misdemeanor if personal items of this kind are omitted from the account. Certification to the District Attorney for criminal prosecution would therefore be a meaningless gesture, and I would not have certified to the District Attorney item (a) above.

A reading of the remaining three items (b), (c) and (d) certified to the District Attorney will reveal that

they deal solely with the manner and form of accounting. The majority of the Court was careful to point out that all of the payments involved were legal expenditures and that the evidence disclosed neither fraud nor corruption. With respect to item (b) above, the majority opinion states the following:

"Regardless how it may have actually been paid, the manner in which the accounting was made is in contravention of the Act of 1937 under 1611 (c)."

With respect to item (c) above, the majority opinion states the following:

"The explanation of it at the Audit and the production of receipts of all of the recipients of the money paid shows the money to have been paid for a service which, under the Act, is a lawful service for which a candidate may pay money. These payments were paid through one who stood in relation of agent to Judge LAUB, and payments may legally be made through agent without the written authorization required by the Act of 1937 as to a treasurer of a political committee or one who discriminately pays petty expenses, but such payments must be accounted for in the same manner in which payments made directly by the candidate must be accounted for, i. e., with proper bill and receipt stating the payment. In this instance, that was not done. Though the services rendered by the four persons employed by Mr. Weber, as shown by the testimony, were services which might be secured and paid for by the candidate, the manner in which this was accounted for was in contravention of the Act of 1937."

With respect to item (d) above, the majority opinion states the following:

"As to the payments made by George F. Coffin, Jr., the service of George F. Coffin, Jr. in supervising the posting of Judge LAUB'S campaign cards, was a lawful service, but the manner of payment and accounting is not within the provisions of the Act of 1937. As has been pointed out by the Auditor, even after amendment

as requested by the accountant, the account will not show the payment of, nor the receipt for, sixty dollars to William F. Martin for distribution and posting, nor will it show the payment of, nor the receipt for forty dollars paid to Ike Thomas for posting cards. While we see nothing in this transaction which raises even the slightest suspicion of fraud in the election, still, under the mandatory terms of the Act of 1937, it becomes the duty of the Court to certify the facts to the District Attorney of Northampton County."

In view of the findings of the majority of the Court and the Auditor that items (b), (c) and (d) involve no illegal expenditures and no fraud or corruption, with which findings I agree, I would not have certified these items to the District Attorney for criminal prosecution. I am of the opinion, as hereinafter more fully set forth, that the Legislature contemplated the imposition of costs only in cases involving substantial errors in accounting and did not intend the drastic penalties of criminal prosecution and quo warranto proceedings where the evidence discloses no illegal expenditures or fraud or corruption.

The following items were certified by the majority of the Court to the Attorney General:

"(e) The payment to Walter C. Kressler of the sum of six hundred twenty dollars, accounted for as messenger service by Walter C. Kressler while the evidence before the Auditor discloses that payments were made by Walter C. Kressler in cash, varying from ten to twenty dollars, to numerous persons testified to have been for messenger service and the failure to attach to the account 'bill stating the payment and a receipt', and nothing being set forth in the account, nor any evidence at the audit, to show to whom the bulk of it was paid, nor in what amounts, nor for what service, as required by the Act of 1937;

"(f) The payments made to William D. Aust for messenger service, totalling seven hundred fifteen dol-

lars, accounted for as 'messenger service' by William B. Aust, which sum is excessive and unreasonable for the service as set forth in the account;

"(g) The furnishing of free beer and food to persons in attendance at a political meeting held in further-ance of the campaign of this candidate, as shown by the evidence adduced before the Auditor, and for which political meeting Eugene Ginta was paid the sum of fifteen dollars by the accountant;

"(h) The furnishing to persons, in attendance at political meeting held in furtherance of the campaign of this candidate, of free beer and food, for which political meeting Anthony F. Falcone was paid the sum of fifty-five dollars by the accountant."

The above matters are certified to the Attorney General of the Commonwealth for quo warranto pro-ceedings against Judge LAUB. They are not certified to the District Attorney. It is therefore necessary, in a consideration of the above items, to keep in mind that under the Election Code the requirements for cer-tification to the Attorney General differ from the re-quirements for certification to the District Attorney. With respect to certifications to the Attorney General, the Code specifically requires knowledge and consent on the part of the candidate in instances where persons other than the candidate contravene the provisions of the Code. This provision is absent from the section of the Code governing certifications to the District At-torney.

In passing upon the above items, neither the majority of the Court nor the Auditor made any findings of knowledge and consent or fraud or corruption on the part of Judge LAUB. I, likewise, have made no findings of knowledge and consent or fraud or corrup-tion on the part of Judge LAUB because the evidence does not warrant them. Accordingly, for this reason and the reasons hereinafter more fully discussed, I

would not have certified these matters to the Attorney General for quo warranto proceedings.

It is apparent that the matters certified to the District Attorney were so certified because the majority of the Court was of the opinion that errors in accounting are contraventions of the Code and that the Code makes it mandatory upon the Court to certify such matters to the District Attorney for criminal prosecution, even though they disclose no evidence of fraud or corruption. It is also apparent that the matters certified to the Attorney General by the majority of the Court were so certified because the majority of the Court was of the opinion that the Code makes it mandatory upon the Court to certify to the Attorney General for quo warranto proceedings any contraventions of the Code regardless of any evidence to sustain a finding of fraud or corruption. I disagree with this interpretation of the Act of Assembly. I am of the opinion that matters involving errors in the manner and form of accounting bear upon the question of costs only, and that certification to the District Attorney for criminal prosecution and certification to the Attorney General for quo warranto proceedings should be made only where the Court, in the exercise of its judicial function, finds evidence of fraud or corruption. As I have previously stated, I can find no evidence to justify a finding of fraud or corruption in any of the items of Judge LAUB'S Election Expense Account. The majority of the Court and the Auditor found none. Accordingly, my disagreement with the majority hinges upon an interpretation of the provisions of the Election Code. The issues stated in the form of questions are the following:

Is it the legislative intent that certifications to the district attorney for criminal prosecution or certifications to the Attorney General for quo warranto proceedings should automatically follow upon the disclo-

sure of errors in the manner and form of accounting only?

Is it the legislative intent that certifications to the district attorney for criminal prosecution or certifications to the Attorney General for quo warranto proceedings should automatically follow upon the disclosure of contraventions of the Act relative to expenditures, no matter how technical, trivial, passive and unintentional they may be and regardless of any evidence showing fraud or corruption?

Is it the legislative intent that certifications to the Attorney General for quo warranto proceedings should automatically follow upon the disclosure of contraventions of the Act relative to expenditures by persons other than the candidate, regardless of any evidence showing knowledge and consent on the part of the candidate and regardless of any evidence showing fraud or corruption?

An examination of the provisions of the Election Code, having in mind its general purpose, and an examination of the decisions of the Superior Court interpreting the Code and the functions of the Court in election audits will show that these questions must be answered in the negative.

Under the statutory provision for an audit of election expenses, the Court sits solely for judicial functions. That the Legislature recognized the importance and serious consequences of the adjudication of the Court is indicated by the fact that the Code gives the right of appeal to the Superior Court. Section 1611 (b) of the Code (25 P. S. 3231). In *Umbel's Election,* 231 Pa. 94, a case arising under the Corrupt Practice Act of 1906, which contains similar provisions to the Election Code of 1937, the Court at page 99 states the following: "The ultimate object of the audit (of the candidate's account) is to ascertain whether any illegal election expenses were incurred by the candidate, ......."

While the Act contains provisions mandatory in terms, it must be remembered that the "word 'shall' when used by the Legislature to a Court is usually a grant of authority, and means 'may,' and even if it is intended to be mandatory, it must be subject to the necessary limitation that a proper case has been made out for the exercise of the power." *Anderson's Appeal,* 215 Pa. 119, 122; *Becker v. Lebanon, etc. St. Ry. Co.,* 188 Pa. 484; *Pittsburgh v. Coursin,* 74 Pa. 400.

Before discussing the individual sections of the Election Code applicable to this case, it is important to ascertain the general purpose of the legislation in question. The Legislature itself has laid down the following rules of construction as aids in ascertaining the legislative intent.

"When the words of a law are not explicit the intention of the Legislature may be ascertained by considering among other matters—(1) The occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: (1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable."

". . . . . . All provisions of a law of the classes hereafter enumerated shall be strictly construed:

"(1) Penal provisions; . . . . . .

"All other provisions of a law shall be liberally construed to effect their objects and to promote justice." 1937, May 28th, P. L. 1019 Art. IV, sec. 51, 52, 53 (46 P. S. 551, 552, 553).

The courts have held that the Acts of Assembly relative to elections have for their purpose the prevention of fraud or corruption in popular elections. The Supreme Court in *Williams v. Commonwealth*, 91 Pa. 493, at page 503, held the following:

"Both the organic law and the statute strike at bribery, fraud and every corrupt act incident to an election, but leave the candidate free to use all honest means for the success of his party and promotion of his own election. He may disseminate information to the public respecting affairs of state, the principles, the purity and the corruption of the several political parties, and the merits and demerits of candidates; and in so doing he may use every honorable art of persuasion, eloquence and reasoning. These are lawful, are within the very life of free government, and are not forbidden to a candidate, though they make interest for him at an election. The statute carries its own interpretation. In comprehensive terms it expressly authorizes payments and contributions by candidates for printing, traveling expenses, dissemination of information to the public, political meetings, demonstrations and conventions, and excepts out every direct and indirect purchase of the vote or influence of an elector, and every act for any corrupt purpose whatever incident to an election. What is clearly embraced within those terms and not excepted therefrom, is lawful. Interest may be made for a candidate without taint of corruption. Art may be used in securing his election, with pure motive and patriotic purpose. The statute forbids the perversion of art, not its use."

The penal provisions of the Election Code should be strictly construed and its remedial provisions should be liberally construed. In Re: *Petition of Wilhelm*, 111 Pa. Superior Ct. 133, at page 140, the Superior Court stated:

"While this court has held that the Act of 1906 is remedial and should have a liberal construction, yet

as to its penal provisions which are severe in their nature, the act should be strictly construed. *Bechtel's Election Expenses,* supra. In the opinion in that case, the late Judge HEAD quoted with approval from the opinion in *Com. v. Shaleen,* 215 Pa. 595, 597: ' "There is no impropriety in putting a literal construction on a penal clause and a liberal construction on a remedial clause in the same act of parliament." This was said by Chief Justice BEST in *Short v. Hubbard,* 2 Bing. 349, 9 E. C. L. 610. The same rule has frequently been applied in our own cases and only very recently by the present Chief Justice in the case of *Stull v. Reber,* 215 Pa. 156.' *The evidence of a violation of the act should be clear and specific in order to hold one guilty. The purpose of the act was to prevent fraud and corruption at elections. There was nothing in the evidence to justify a finding that appellant was guilty of any fraud or corruption."*

*"It is not our intention that the provisions of the act of assembly should in any manner be relaxed in any case where the evidence indicates fraud or corruption.* The purity of the ballot is the bulwark of our form of government, and the acts of assembly in relation to elections are intended to preserve their sanctity." (Italics supplied)

Section 1611(c) of the Code (25 P. S. 3231), relating to *certifications to the District Attorney,* reads as follows:

"If the court shall decide upon the audit that any person, whether a candidate or not, has accepted contributions or incurred expense or has expended or disbursed money in contravention of this act, it shall certify its decision to the district attorney of the county in which such person may reside, and it shall thereupon be the duty of such district attorney to institute criminal proceedings against such person."

The Code makes the violations of the provisions of the Act misdemeanors punishable by fine or imprison-

ment, or both. Sections 1842, 1844, 1850 (25 P. S. 3542, 3544, 3550).

Section 1851 (25 P. S. 3551) provides that,

"Any person who shall, while a candidate for office, be guilty of bribery, fraud or *willful violation* of any provision of this act, shall be forever disqualified from holding said office or any other office of trust or profit in this Commonwealth." (Italics supplied)

Section 1852 (25 P. S. 3552) provides that,

"Any person convicted of the *willful violation* of any provision of this act shall, in addition to any of the penalties herein provided for, be deprived of the right of suffrage absolutely for a term of four years from the date of his conviction, etc." (Italics supplied)

Under the above Section 1611, the Court must *decide* whether contributions were accepted or expenses incurred, or moneys expended or disbursed in contravention of the Act, or otherwise in violation of the Act. In making a decision under the above section, the Court must not only examine the provisions of Section 1611 but must also examine the other provisions of the Election Code bearing upon certification to the District Attorney and its attendant results as well as the provisions of the Code bearing upon certification to the Attorney General and its attendant results, and the provisions of the Code bearing upon the imposition of audit costs. Only in this way can the Court arrive at the legislative intent.

In determining what matters should be certified to the District Attorney, the Court must necessarily take into consideration the fact that Section 1611 above does not make errors in the manner and form of accounting one of the items requiring certification to the District Attorney. It must also take into consideration the fact that the Code does not make errors in the manner and form of accounting misdemeanors under its penal provisions. It must also take into consideration that under Section 1611 (a) (25 P. S. 3231) sub-

stantial errors in the manner and form of accounting warrant the imposition of costs only. The Court must further take into consideration the drastic penalties which may result if matters are certified to the District Attorney.

If substantial error in accounting is necessary for the imposition of costs, and errors in the manner and form of accounting are not made misdemeanors under the Code, it would be a useless gesture to certify such errors to the District Attorney. The fact that criminal prosecution is to follow certifications to the District Attorney necessarily presupposes that the facts certified are misdemeanors under the Code. Furthermore, a reading of all of the above provisions of the Code leads to the inevitable conclusion that the Legislature did not contemplate that every passive act or omission should automatically visit upon candidates for public office the drastic penalties of criminal prosecution and quo warranto proceedings. It is abundantly evident that the Legislature contemplated such drastic penalties only upon a showing of fraud of corruption.

Section 1612 of the Code (25 P. S. 3232), relating to *certifications to the Attorney General* of the Commonwealth of Pennsylvania, reads as follows:

"If upon audit of any expense account or accounts under the provisions of this act, it shall appear that any candidate who has been nominated or elected has accepted any contributions, incurred any expense or disbursed any money in contravention of this act, either directly or through the treasurer of any committee authorized by section 1603 of this act to pay or incur primary or election expenses in furtherance of his candidacy, or through any other person with his knowledge and consent, whether expressly authorized or not, the court of quarter sessions shall forthwith certify that fact to the Attorney General, who thereupon shall file in the proper court a suggestion for a writ of quo warranto against such candidate. If, upon the hearing

of such writ, it shall be determined that such candidate has accepted any contribution, incurred any expense or disbursed any money in contravention of this act, either directly or through the treasurer of any committee authorized by section 1603 of this act to pay or incur primary or election expenses in furtherance of his candidacy, or through any other person with his knowledge and consent, whether expressly authorized or not, judgment of ouster from nomination, in the case of a candidate for nomination where the judgment is entered prior to the subsequent election, or judgment of ouster from office in the case of a candidate for election or in the case of a candidate for nomination who has been subsequently elected to the office for which he was nominated, shall be entered against him: etc."

In determining what matters should be certified to the Attorney General of the Commonwealth, the Court must take into consideration not only Section 1612 of the Code (supra), dealing with quo warranto proceedings, but it must also take into consideration what is to follow such certification under Section 1851 (supra), as well as Article VIII, Section 9 of the Pennsylvania Constitution, which specifically sets forth the acts for which a person may be disqualified from holding an office. Section 1612 (supra), dealing with certifications to the Attorney General, expressly covers payments by a candidate in contravention of the Act, either directly, or through the treasurer of any committee, or through any other person, with the candidate's knowledge and consent, whether expressly authorized or not. It is important to note that where the illegal disbursement is made by a person other than the candidate the act *specifically requires knowledge and consent on the part of the candidate* before certification to the Attorney General can properly be made, and that errors in the manner and method of accounting are not made the subject of certification to the Attorney General.

It is also significant that the Election Code, Section

1851 (supra), as well as the Constitution of the Commonwealth of Pennsylvania specify guilt of a *willful violation* as one of the conditions precedent to disqualification from holding office. The constitutional provision, Article VIII, Section 9, reads as follows:

"Any person who shall, while a candidate for office, be guilty of bribery, fraud or willful violation of any election law, shall be forever disqualified from holding an office of trust or profit in this Commonwealth, and any person convicted of willful violation of the election laws shall in addition to any penalties provided by law be deprived of the right of suffrage absolutely for the term of four years."

In the light of the above provisions, it was plainly the legislative intent, that certifications to the Attorney General for quo warranto proceedings should not automatically follow every passive or unintentional violation of the Code, but that such certifications should follow only in cases where the evidence indicates fraud or corruption. Any other interpretation of the Code would lead to the unreasonable result of visiting upon the candidate the odium of ouster proceedings and criminal prosecution for every violation however innocent and even though the violation did not effect in any way the honesty of the election.

That the Legislature did not intend such an unreasonable result becomes all the more evident when the section of the Code bearing upon the imposition of costs is examined.

Section 1611 (a) (25 P. S. 3231) of the Code, relative to the imposition of costs, reads as follows:

"If upon the audit, the court shall decide that the account was false in any substantial manner, or that any expenses have been incurred in contravention of this act, the costs of said audit shall be paid by the accountant, otherwise the court shall make such order as to payment of costs as shall be just in the circumstances."

Under this section, the costs of the audit shall be paid by the accountant in two classes of cases: (1) Where the account is false in any substantial manner, or (2) where any expenses have been incurred in contravention of the Act.

It is noteworthy that the Legislature made important distinctions in the above sections of the Code relating to the imposition of costs, certification to the District Attorney, and certification to the Attorney General. In my opinion the Legislature was evidently distinguishing between violations involving passive acts or omissions which evidenced no moral turpitude or fraud, and violations involving fraud or corruption. If every passive act or omission in contravention of the act is to subject a candidate to criminal prosecution and quo warranto proceedings, why did the Legislature require that the account must be "false in any substantial manner" before costs are imposed?

That the evidence must indicate fraud or corruption before the Court may properly certify matters to the District Attorney or to the Attorney General, in my opinion, has definitely been decided by the following decisions of the Superior Court of Pennsylvania.

In Re: *Petition of Wilhelm*, 111 Pa. Superior Ct. 133, at page 142 (a case decided under the Act of 1906):

*"The evidence of a violation of the act should be clear and specific in order to hold one guilty. The purpose of the act was to prevent fraud and corruption at elections. There was nothing in the evidence to justify a finding that appellant was guilty of any fraud or corruption."*

*"It is not our intention that the provisions of the act of assembly should in any manner be relaxed in any case where the evidence indicates fraud or corruption.* The purity of the ballot is the bulwark of our form of government, and the acts of assembly in relation to elections are intended to preserve their sanctity."
(Italics supplied)

*Kearney's Account,* 136 Pa. Superior Ct. 78, at pages 83 and 84:

"While it must be conceded that ignorance of the provisions of the Act of 1937 would not excuse the accountant from compliance with it, yet, such a severe and drastic penalty as subjecting him to the danger of loss of a position to which the people of the Borough of Dunmore had elected him, upon a mere passive act or omission which involved no moral turpitude or fraud, would be inconsistent with our sense of justice.

"Appellants in their brief state: 'The violations of law in the instant case, would subject the accountant to a criminal prosecution, as the act provides that such violations be certified to the District Attorney for prosecution. Act June 3, 1937, P. L. 1333, Art. XVI, Section 1611. But the appellants did not, and are not now asking that this be done. Their contention is, that the case should have been certified to the Attorney General, so that quo warranto proceedings might be instituted by him.' In view of this statement, we shall confine ourselves to the remaining question of a right to a writ of quo warranto.

"Quoting from the opinion of the court below:

" 'The auditor has found, and we concur with him, that these expenditures in amounts over ten dollars, paid in cash instead of by check or money order, were, if violations of the Code at all, purely technical in character. All such expenditures were properly accounted for and were expenses authorized to be paid by a candidate.'

"The right to a writ of quo warranto is not absolute. It rests in the sound discretion of the court. Quoting from the opinion of Mr. Justice PAXSON in *Commonwealth v. Davis,* 109 Pa. 128, at p. 129: 'It is settled law both in this country and in England that quo warranto is not a writ of right; it rests in the sound discretion of the judge whether he will allow the writ. The late Chief Justice GIBSON has made this so plain

in *Com. v. Jones*, 2 Jones 365, that no room is left for doubt. The same rule is declared in *Com. v. Reigart*, 14 S. & R. 216; *Com. v. Cluley*, 6 P. F. S. 270, and in *Com. v. McCarter*, 2 Out., 607.' See also *Com ex rel. Miller v. Sommer*, 309 Pa. 447, 164 A. 515.

"In our disposition of this case we do not wish to be understood as departing one iota from what we stated in the case of *Petition of Wilhelm et al.*, 111 Pa. Superior Ct. 133, 169 A. 456, at p. 142: 'It is not our intention that the provisions of the act of assembly should in any manner be relaxed in any case where the evidence indicates fraud or corruption. The purity of the ballot is the bulwark of our form of government, and the acts of assembly in relation to elections are intended to preserve their sanctity.'

"*In the absence of any finding and no evidence to sustain such a finding of fraud or corruption, we believe that the auditor, as well as the learned court below, arrived at a correct conclusion.*" (Italics supplied)

While some of the cases cited in this opinion arose prior to the adoption of the Election Code of 1937, the terms and words employed in the Code of 1937 had, at the time of their enactment, acquired a definite meaning as a result of the judicial interpretations of the prior statutes on the same subject. Such terms and words must be given a similar interpretation in the new statute. The adoption or reenactment of a statute that has received judicial construction adopts the construction given. *Lehigh County v. Sefing*, 289 Pa. 33; *Bingaman's Estate*, 281 Pa. 497; *Commonwealth v. Shawell*, 325 Pa. 497; Section 103 (b) (25 P. S. 2603) of the Election Code of 1937.

The testimony of Judge LAUB reveals that there was no intent on his part to avoid accounting for the moneys spent by him during his campaign. I consider his testimony entirely credible, honest, and therefore worthy of belief. While the audit was necessary to bring upon

the record certain information not disclosed in the original account as filed, after amendment of the account, and after the taking of testimony was completed, Judge LAUB had placed upon the public records, all of the information available to him for the public to determine whether he had obeyed or violated the mandates of the law. The record at this juncture disclosed "passive acts or omissions," but in my opinion it did not disclose anything to indicate that Judge LAUB was guilty of fraud or corruption. The burden was then cast upon the petitioners to produce evidence of the fraud or corruption which they charged against Judge LAUB in their petition for an audit. The petitioners having utterly failed in this, Judge LAUB should not be subjected to the drastic penalties of criminal prosecution and quo warranto proceedings looking toward his ultimate ouster from the high office to which the people of Northampton County had elected him.

For the reasons hereinabove set forth, I concur in the Order and Decree of the majority of the Court dismissing petitioners' exceptions to the Report of the Auditor, numbers 1, 2, 3, 4, 5, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, and 38, and dismissing all of the accountant's exceptions to the Report of the Auditor. I dissent from so much of the Order and Decree as sustains petitioners' exceptions numbers 12, 20 and 29. I would dismiss these exceptions. I also dissent from that portion of the Order of the majority of the Court which dismisses petitioners' exceptions numbers 6, 7, 8, 9, 10 and 11 but certifies the facts to which they relate to the District Attorney or the Attorney General. I would dismiss petitioners' exceptions numbers 6, 7, 8, 9, 10 and 11 and make no certifications to either the District Attorney or the Attorney General of the facts to which they relate. I would affirm the Findings of Fact and Conclusions of Law of the Auditor.

Appeals were taken by the accountant (No. 114) and by the petitioners (No. 138), respectively.

*T. McKeen Chidsey,* with him *Calvin F. Smith,* for accountant, appellant No. 114, appellee No. 138.

*A. E. Hurshman,* with him *Everett Kent,* for petitioners, appellants No. 138, appellees No. 114.

PER CURIAM, July 18, 1941:

These appeals have their origin in a petition filed by Nellie Snyder and sixteen other persons under section 1611 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS sec. 3231, praying for an audit of the expense account filed by Herbert F. Laub, the successful candidate for Judge of the Court of Common Pleas of Northampton County at the election held on November 2, 1937. An auditor was duly appointed.

In view of our disposition of the case, we shall not recite the proceedings intervening between the appointment of the auditor on January 13, 1938 and the filing of his report on May 17, 1940; nor is it necessary to state at length his findings of fact and conclusions of law. It is sufficient to say that he found that the account as filed contained numerous errors respecting the dates when certain listed expenditures were paid, and failed to set forth in detail, as required by the Election Code, all the names of people who had ultimately received compensation for services rendered the accountant out of the payments made and accounted for by him; and that he had been negligent in the preparation of the account. His conclusions of law were, (1) That the errors in the account respecting the dates on which the listed expenditures were paid were not such

errors as would render the account false in a substantial manner; (2) that the account was false within the meaning of the Election Code of 1937, as explained in *Bechtel's Election Expenses*, 39 Pa. Superior Ct. 292, in that it did not set forth the names of all persons who were paid for services rendered the accountant during his campaign and the amount paid to each; (3) that the account, even as amended, would be false as not showing the payment of $40 to Ike Thomas and $60 to William Martin, respectively, for posting campaign cards [although it did show the payment of $100 to George F. Coffin, Jr., the person who employed Thomas and Martin to do the work]; (4) that the audit of his expense account was justified by the character of the account as filed; and (5) that the costs of the audit should be imposed on Mr. Laub. Neither his findings nor conclusions justified any charge of fraud or intentional misconduct on the accountant's part.

Exceptions to the auditor's report were filed by the petitioners and the accountant, respectively.

After full hearing and consideration, the majority of the court, composed of Honorable SAMUEL E. SHULL, President Judge of the 43d Judicial District, specially presiding, and Judge McCLUSKEY, entered a decree dismissing petitioners' exceptions Nos. 1, 2, 3, 4, 5, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 30, 37 and 38; sustaining exceptions 12, 20 and 29; dismissing exceptions 6, 7, 8, 9, 10 and 11, as framed, but certifying certain facts to which they related, to the District Attorney of Northampton County for criminal prosecution, and to the Attorney General of the Commonwealth for quo warranto proceedings, respectively. All other exceptions of the petitioners and all of the accountant's exceptions were dismissed. The opinion of the court while holding that the account was false in a substantial manner, absolved the accountant of any fraud, or wilful, deliberate violation of

the election laws and refused to sustain petitioners' contention that he was disqualified from holding an office of trust or profit.

Judge BARTHOLD, the remaining member of the court, filed a dissenting opinion.

Appeals were taken to this court by the accountant, No. 114, and by the petitioners, No. 138.

A careful review of the record as a whole satisfies us that the opinion of Judge BARTHOLD correctly disposes of the questions raised in both appeals, and we adopt that opinion as the opinion of this court. It will appear in the report of the case.

No. 114—The decree is reversed, and a decree is directed to be entered in accordance with Judge BARTHOLD'S opinion. The costs on appeal to be equally divided between the appellant and the appellees, petitioners.

No. 138—Appeal dismissed at the costs of the appellants.