## In re Contested Election of Office of Register of Wills, etc.

*Joseph Marinelli, Maurice Stern, A. E. Hurshman,* and *Isidor Ostroff,* for petitioners.

*Marshall H. Morgan,* contra.

*William Barclay Lex,* amicus curiæ.

CRUMLISH, J., December 5, 1941.—

1. John F. McCloskey, Charles H. Hersch, W. Carlton Harris, and Robert C. White, the Democratic candidates for the offices of Register of Wills, Coroner, City Treasurer and Controller of the City of Philadelphia, respectively, at the last municipal election on November 4, 1941, have filed their separate contest petitions. The matters are now before us on motions to quash. These motions were argued together and will be disposed of in one opinion.

2. The situation which presents itself is a peculiar one. The county board of elections has not yet completed its duty of computing and canvassing the returns for the said election; and consequently, no candidate has as yet received a certificate of election for office. However, according to unofficial election returns, John P. Boland, Herbert N. Goddard, and Edgar W. Baird, Jr., candidates of the Republican party, were elected to the offices of register of wills, coroner, and

city treasurer, respectively, while Robert C. White, Democrat, was elected to the office of controller.

3. The petitions were filed on November 24, 1941, pursuant to section 1756 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §3456, which provides, with regard to elections of this type, that:

"The commencement of proceedings . . . shall be by petition, which shall be made and filed . . . within twenty days after the day of the . . . election . . . The petition shall concisely set forth the cause of complaint, showing wherein it is claimed that the . . . election is illegal, and after filing may be amended with leave of court, so as to include additional specifications of complaint. After any such amendment, a reasonable time shall be given to the other party to answer."

The requirements as to bond have been met by each petitioner.

4. The motions to quash are based principally on the ground that the petitions fail to set forth concisely and with sufficient particularity a cause of complaint. Specifically, it is objected that the petitions have not averred the number and identity of those persons whose votes were alleged to have been illegally cast for the Republican candidates; and that the nature of the illegality has not been set forth.

With regard to the contest petition for the office of controller, respondent raises the additional objection that the "petition does not purport to contest the election of any candidate" for that office.

5. We are unable to uphold the contention of respondents that the petitions now before the court are insufficient and should be quashed. The contest provisions of the Pennsylvania Election Code are remedial and to be construed to advance the remedy: Election Cases, 65 Pa. 20, 31 (1870). Liberal construction should therefore be applied: ibid.

"The penal provisions of the Election Code should be strictly construed and its remedial provisions should

be liberally construed": Laub's Expense Account, 145 Pa. Superior Ct. 513, 523.

Consequently, the element of particularity in the allegation should not be overemphasized in such a manner as to defeat the practical application of the remedy. Yet this is the effect of respondents' assertion that the petition to be sufficient should set forth specifically the number and identity of those who voted illegally or were otherwise guilty of unlawful conduct.

"Let it be known that an election fraud must not only be discovered, but that every individual engaged in it must be ascertained and named before a step can be taken to establish it, and the chance for a fair election will be more and more remote. We cannot thus throw a shield around fraud": Mann v. Cassidy, 1 Brewst. (Pa.) 11, 19 (1856), sum nom., In re District Attorney's Contested Election, 2 Phila. 199, 202, 13 L. I. 396 (1856).

"It would be an intolerable technicality if the petitioners were required to set forth in their complaint, within ten [now twenty] days after the election, every illegal vote, every illegal act of the election boards, and every instance of fraud. Such a nicety would prevent investigation and defeat the remedy itself": Agnew, J., in Election Cases, supra, at p. 36.

The requirement that the petition state concisely the cause of complaint should not be construed "to mean that the grounds of complaint shall be set forth with every particularity; on the contrary, conciseness is inconsistent with that. To be concise is to be brief, not particular in this sense. Enough must be briefly set out to warrant an investigation, to give the opposing party a reasonable notice of the character of the investigation, and that if successful the result will be changed": In re Contested Election of Beamish, 1 Lanc. L. R. 155 (1884), quoted with approval in Pazdrak's Contested Election, 288 Pa. 585, 590, 591 (1927). This the petitioners have done.

"Concise" is defined in Webster's New International Dictionary, as follows:

"1. Expressing much in a few words; condensed; brief and compact;—used of style in writing or speaking."

To demand specification of the alleged fraud is to require the production of evidence. It is clear, however, that, "The *proof* of facts must *follow*, not precede the complaint": Election Cases, supra, at p. 31.

For additional authority to the effect that the petition alleging the receipt of illegal votes need not specify the names or the disqualifications of such voters, see Gressang's Contested Election, 5 Pa. C. C. 251, 253 (1888), Mann v. Cassidy, supra, and Bertolet's Election (Endlich, J.), 13 Pa. C. C. 353, 356 (1893). Similarly, a petition is not insufficient merely because it charges that votes to a certain number "and upward", or by similar expressions, have been illegally received: Kneass' Case, 2 Parsons 559, 573 (1851); Mann v. Cassidy, supra; Ayre's Contested Election, 287 Pa. 135 (1926); Pazdrak's Contested Election, supra; Bright's Contested Election, 292 Pa. 389 (1928); Eckert's Election, 308 Pa. 375 (1932).

In Pazdrak's Contested Election, supra, at page 586, the expressions used in the petition were: ". . . a large number, 50 in all . . ." "a large number of people, 100 in all . . . ," etc., voted for Pazdrak. The respondent moved to quash the petition, which motion was denied by Maxey, J. Subsequently, the motion was reinstated and, after argument, granted by Newcomb, P. J. On appeal, the Supreme Court quoted from Election Cases, supra, Mann v. Cassidy, supra, Cole's Election, 223 Pa. 271, In re Contested Election of Beamish, supra, and reached the conclusion that the action of the lower court in quashing the petition should be reversed and held (p. 590):

"We agree with the trial court that it must appear in the petition that the errors complained of would

change the result of the election, but do not agree that the petition in the instant case is fatally defective in that respect. By section 4 of the petition, as quoted in the Reporter's notes, [which, following after the allegations of illegal votes cast by 'a large number of people', etc., provided as follows: '4th: If the election votes had been correctly counted and corrected returns made as above set forth, John Wallace would have been returned as elected to the office of auditor of said Fell Township; and in truth and in fact he would receive a majority of the votes cast by qualified electors in all of the four districts of said township, including the Second District of said Township.'] when considered with other averments of the petition, it sufficiently appears that the errors complained of, if established, would change the result of the election for auditor in the township; hence, the question cannot be treated as academic."

In Bright's Contested Election case, supra, an examination of the paper books discloses the terms "more than 140 persons, . . . a large number of persons, to wit, more than 100 persons", etc., were used in the contest petition.

In Ayre's Contested Election, supra, an examination of the paper books indicates that in subdivisions 4, 5, 6, 7, 8, and 9 of paragraph 5 of the contest petition, in the allegations that illegal votes were cast for Ayre, the expressions used were, "30 or more persons", "20 or more persons", "20 or more persons", "5 or more persons", "5 or more persons", "50 or more ballots", respectively. On motion to quash, it was contended that these averments were vague and indefinite. The lower court, speaking through Coughlin, J., held that the averments contained in subdivisions 1, 2, and 3 of paragraph 5 were "vague and indefinite and lacking in specific and essential averments," while the averments in subdivisions 4 to 9, inclusive, were deemed to be sufficient and "as to these averments only, respondent is directed to file answer." In passing upon this ruling,

the Supreme Court, speaking through Justice Walling, held (p. 138) :

"Again, the order of the court, relieving respondent from answering the three subdivisions was harmless, as subdivisions four to nine, inclusive, of paragraph five, were adjudged sufficient, were answered by respondent and embrace the vital contention, to wit: that more than thirty unregistered citizens, twenty or more minors, twenty or more who were not qualified by payment of taxes, five or more who were not citizens of the district and five 'or more who were neither native born nor naturalized citizens, voted in the one district; also that more than fifty ballots were fraudulently and illegally voted and counted for Ayre in that district. Proof of the latter allegation alone or even the major part thereof would have resulted in Lavin's election. There was, therefore, a full opportunity given contestants to establish their case unembarrassed by any restrictions in the pleadings; that they offered no evidence was not the fault of the court or of the respondent."

The learned counsel for respondents relies strongly upon Gollmar's Election Case, 316 Pa. 560, 563 (1934). In the Gollmar case, the contest petition alleged violation of the election laws by boards of 21 districts and made use of such expressions as: " '. . . upwards of 75 voters' were permitted to be illegally assisted; that 'upwards of 100 persons' were allowed to cast ballots . . . and that 'upwards of 25' nonregistered but otherwise qualified voters . . . were unlawfully refused permission to qualify and vote". In the motion to quash, these allegations were attacked as being vague and indefinite. The motion to quash was sustained in an opinion by Patterson, J., which was adopted per curiam by the Supreme Court. A close reading of that case as a whole, including the record and the opinion, discloses that the petition was held to be defective because it failed to contain the essential

averments that the alleged illegal votes accrued to the benefit of respondent. This is clearly set forth in the court's opinion at pages 566, 567:

"To justify the conclusion that upwards of 1,500 votes were illegally cast for respondent, we must assume that in the election districts concerning which complaint is made, the votes said to have been illegally received were cast for respondent. The presumption is that the votes recorded for respondent by the return board were legal and if it is proposed to be proved that any of them were illegal, it is essential that the petition contain averments that these illegal votes accrued to respondent. Yet in scrutiny of the petition it nowhere appears that any of the ballots said to have been illegally received were voted for respondent. . . .

"It is apparent, however, that contestant does not seek to purge the ballot boxes but to have the entire return in the several districts rejected. This contention is rested on the averment that the result was to increase the vote of Gollmar by 1,500. This is a conclusion without a premise. In 21 districts it is not averred that any of the illegal ballots were cast for respondent or that contestant was deprived of any legal ballots, how then can we conclude that the total vote of respondent was unlawfully increased by 1,500?"

At the argument, counsel for respondents agreed that Election Cases, supra, and Pazdrak's Contested Election, supra, were not overruled by Gollmar's Election Case, supra. With this, we are in accord.

From an examination of the authorities in point, we conclude that the essential elements of an election contest petition, concisely setting forth and showing wherein it is claimed that the election is illegal, must contain:

(a) Allegations of fraud or other illegal acts, in plain and distinct language, which will give respondent sufficient information of the charges he is required to meet;

(*b*) Such allegations must be accompanied by averment or averments that the illegal votes or conduct accrued to the benefit of respondent; and,

(*c*) It must appear on the face of the petition that the allegations of illegality, if sustained, would require the court to set aside the result of the election, which would have been otherwise if all had been done legally.

Upon examination of the contest petitions now before us in the light of the foregoing principles and authorities, we reach the conclusion that respondents' objections of lack of sufficient particularity are unfounded.

6. Respondents' objection that the petition as to the office of controller does not "purport to contest the election of any candidate" for that office raises a novel question. The official computation and canvassing had not been completed within the time limit fixed by the Pennsylvania Election Code of 1937 for filing contest petitions, and is going forward at this time. The so-called unofficial count indicated that the contestant, White, was the successful candidate by a close margin. Must a candidate, under such circumstances, wait until the official return is made, one which might very well be unfavorable to him, before filing a contest petition? We are of the opinion that this question must be answered in the negative. There is a cardinal rule which permeates every election contest case and charges the court with the duty of safeguarding the true intent of the electorate. It was said in Gollmar's Election Case, supra, at pages 568, 569:

"It was never the intent of the statute nor the policy of the courts to encourage election contests without allegations of specific fraud to warrant such action. The sanctity of the ballot should be guarded jealously, and where charges are made which if sustained by proof would show the honest will and intent of the electorate to have been thwarted as to the office in-

volved and would change the result, the court will not hesitate to direct the necessary inquiry to right the wrong, difficult and expensive though it may be."

In Kneass' Case, supra, the rule was stated thus (p. 595):

"The true policy, to maintain and perpetuate the vote by ballot, is found in jealously regarding its purity; in placing no fine-drawn metaphysical obstructions in the way of testing election returns, charged as false and fraudulent; and in assuring to the people by a zealous, vigilant and determined investigation of election frauds, that there is a saving spirit in the public tribunals charged with such investigations, ready to do them justice, if their suffrages have been tampered with by fraud, or misapprehended through error."

To have delayed filing of a contest petition beyond the time limit fixed by the statute would have foreclosed the candidate's right to contest the official returns, if later found to be unfavorable to him. In the interest of an honest election and pursuant to the court's duty to provide protection against undue interference with the will of the electorate, we hold that the objections here considered must also be dismissed.

### Order

And now, December 5, 1941, the motions to quash the contest petitions are denied.