COMMONWEALTH of Pennsylvania

v.

**Harold T. BECK, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2002.

Decided Nov. 18, 2002.

As Amended Nov. 21, 2002.

Gregory A. Henry, Bradford, for appellant.

1. Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600–3591.

2. Specifically the Commonwealth charged Beck with: failing to register a political committee, Section 1622 of the Election Code, 25 P.S. § 3242; failing to file post-election reports, Section 1626 of the election Code, 25 P.S. § 3246; failing to file an annual report,

Mary Benefield Seiverling, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, SIMPSON, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

In this second appeal of Harold T. Beck (Beck), he challenges his convictions in the Court of Common Pleas of McKean County (trial court) for multiple violations of the Pennsylvania Election Code (Election Code).[1] In addition to fines and costs, Beck's voter registration card was canceled, he was prohibited from voting for the next four years, and he was forever disqualified from holding elected office in the Commonwealth.

Beck's convictions result from his failure to file required political committee registration and campaign expense reports and from an improper termination report during his successful 1995 campaign for McKean County Commissioner. While he held office, the Commonwealth charged Beck with five misdemeanor violations of the Election Code.[2] The Commonwealth also filed similar charges against Eileen B. Smith (Smith), Beck's sister-in-law, purported to be Beck's campaign treasurer.

A three day jury trial was held in February 2001, when Beck no longer held office. At the beginning of the trial, Smith

Section 1627 of the Election Code, 25 P.S. § 3247, and filing an improper termination report, Section 1627(a) of the Election Code, 25 P.S. § 3247(a). Beck and Smith filed pretrial motions to dismiss the charges. The trial court denied the motions. On further appeal, we affirmed. *See Commonwealth v. Beck*, 715 A.2d 1239 (Pa.Cmwlth.1998) *petition for allowance of appeal denied*, —— Pa. ——, 809 A.2d 906 (1999).

was represented by Attorney Gregory Henry, and Beck represented himself.

The Commonwealth presented testimony by Judy Ordiway, Director of the McKean County Board of Elections (Board). In March 1995, Beck filed a nomination petition to be placed on the ballot for county commissioner. Reproduced Record (R.R.) R.R. 235a–236a; 679a–697a. He also filed a notarized statement of financial interests, disclosing his positions as president of the Walter Beck Corporation and the Mountain Laurel Publishing Corporation. R.R. 236a. In addition, Beck signed a "Waiver of Expense Account Reporting Affidavit," stating,

> [he] does not intend to form a political committee or to receive contributions or make expenditures in excess of Two–Hundred–Fifty Dollars ($250) during any reporting period, that, as a candidate, he ... will keep record of contributions as required by law; that, as a candidate he ... will file reports as required by law, if contributions or expenditures exceed Two–Hundred–Fifty Dollars ($250).

R.R. 697a.

Beck, as a candidate and not as a committee, filed six campaign expense reports listing expenditures and receipt of funds in excess of $250. R.R. 698a.–737a. Included in the reports were expenses for advertising in The Review, of which Beck was the editor.

Significantly, on October 27, 1995, Beck filed a candidate campaign expense report listing total expenditures of $1,507.84 and total receipts of $584.00, leaving a negative balance of $923.84. R.R. 260a., 729a.–735a. The negative balance would be a critical factor in one of the violations.

Thereafter, Beck filed a candidate expense report for the reporting period from October 27 to December 7, 1995. R.R.

736a. He identified this report as his "termination statement." *Id.* On the report, he signed a sworn statement certifying the aggregate receipts, disbursements or liabilities incurred during the reporting period did not exceed $250. *Id.* The termination statement, however, did not clarify how the unpaid debt of $923.84 from the prior statement was resolved. *Id.* Based on Beck's assurances that he satisfied all campaign obligations, Ordiway advised him this termination statement would satisfy the Election Code's reporting requirements. R.R. 259.

On October 13, 1995, an individual sent Ordiway a letter inquiring about a political advertisement published in The Review, containing the footer "Paid for by the Committees for Stratton and Beck." The sender asked Ordiway to identify the members of these political committees. Ordiway could not respond because neither Beck nor Stratton registered a political committee. Ordiway brought the letter to the attention of the Board, which sent Beck a registered letter, stating:

> We have received a verbal and written request regarding political advertising for "the Committees to elect Stratton and Beck."
>
> We respectfully request that you review the campaign Expense Reporting booklet enclosed, particularly Section 1624 Registration.
>
> If you fall into this category, we have enclosed the proper paperwork for registering your committee with the county board of elections; along with your Campaign Expense Reporting Forms.
>
> If you have any further questions please feel free to contact us at 887–5571.

R.R. 741a. Although Beck signed a receipt for this letter, he did not respond.

Further, Beck's campaign manager, Jeff Franklin, testified that he and Beck draft-

ed a letter which appeared in The Review seeking to solicit contributions for the "Committee to Elect Harold Beck." R.R. 277a. Franklin and Beck discussed using the phrase "the Committee to Elect Harold Beck" in the letter. R.R. 282a. The letter named Eileen Smith as treasurer of the committee. R.R. 786a. According to Franklin, Beck formed a political committee prior to the time Franklin joined the campaign. R.R. 271a.

In addition, the Commonwealth submitted ten checks payable to the "Committee to Elect Harold Beck" or something similar. R.R. 788a.–791a. The checks were endorsed by Smith, and most of the checks also contained the endorsement "Committee to Elect Harold Beck." *Id.*

At the close of the Commonwealth's case, Smith's counsel moved to dismiss the charges against her as *de minimis*, and the trial court granted the motion. R.R. 402a., 446a. From that point on, Smith's counsel represented Beck. Ultimately, the jury convicted Beck on three counts: failing to register a political committee; failing to file an annual report on behalf of the committee; and improperly filing a report indicating his campaign reporting requirements were terminated. Following denial of Beck's post-sentence motions by operation of law, Beck filed the instant appeal.

## I.

Beck first contends there was insufficient evidence to support each count upon which he was convicted by the jury.

In evaluating a sufficiency of the evidence claim, we must determine whether the evidence and all reasonable inferences deducible therefrom, viewed in a light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Drumheller*, —— Pa. ——, 808 A.2d 893 (2002)

(No. 327 CAP). Any question of doubt is for the jury, as fact-finder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Galindes*, 786 A.2d 1004 (Pa.Super.2001). As fact finder, the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605 (2001).

## A.

The jury convicted Beck of permitting, directing, soliciting or aiding "Citizens for Beck" or "Committee to Elect Beck," a political committee, to receive contributions in excess of $250, without filing a registration statement. R.R. 65a. The registration requirement, codified at Section 1624(a) of the Election Code, provides in pertinent part:

> Any political committee which receives contributions in an aggregate amount of two hundred fifty dollars ($250) or more shall file a registration statement, designed by the Secretary of the Commonwealth, with the appropriate supervisor within twenty (20) days after the date on which it receives such amount. . . .

25 P.S. § 3244(a).

Section 1621 of the Code defines "political committee" as any committee, club, association or other group of persons which receives contributions or makes expenditures. 25 P.S. § 3241(h). The registration statement discloses, among other things, the identities of the committee's members, the members' roles within the committee and the candidate being supported by the committee. 25 P.S. § 3244(b).

## 1.

Here, the record contains sufficient evidence to support a finding that Beck formed a political committee. Specifically, Beck's campaign manager, Jeff Franklin, testified:

Q: Do you know whether or not there was ever a political committee in existence?

A: Yes. [Beck] had formed one.

Q: And how do you know that?

A: In his Mountain Laurel Review he had done that. He had already had it done prior to me even coming on board.

R.R. 271. Franklin testified that the political committee was comprised of himself, Beck and Eileen Smith. R.R. 297a. Franklin further testified that Eileen Smith served as treasurer of Beck's political committee. R.R. 272a. Franklin also testified that he and Beck authored a letter to The Review to solicit financial support for the "Committee to Elect Harold Beck." R.R. 275a.–277a., 786a. Thereafter, political advertisements appeared in The Review containing the footers "Paid for by the Committees for Stratton and Beck" or "Paid for by Citizens for Beck, Jeff Franklin, Chairman/ Eileen B. Smith, Treasurer." R.R. 282, 786a, 792a–793a. Further, the Commonwealth introduced ten checks written by various contributors to the "Committee to Elect Beck" or the "Harold Beck Campaign Fund." R.R. 788a–791a. All of these checks are endorsed by Eileen Smith, and certain checks also contain the endorsement "Committee to Elect Harold Beck." *Id.* This evidence is sufficient to establish that Beck formed a political committee.

## 2.

Also, there is sufficient evidence that contributions exceeded $250. In particular, the checks admitted into evidence total $360.00. R.R. 788a.–791a. That amount excludes cash contributions. R.R. 280a.

## 3.

Finally, the Board sent Beck a registered letter informing him of the registration requirement for political committees. R.R. 255a., 740a.–741a. There is no dispute Beck signed for this letter, though he never responded to it. R.R. 257a., 476a.[3] There is no dispute that Beck did not file any political committee registration statements.

Accordingly, the evidence is sufficient to establish, beyond a reasonable doubt, that Beck permitted, directed, solicited or aided "Citizens for Beck" or "Committee to Elect Beck," a political committee, to receive contributions in excess of $250, without filing a registration statement. *See* 25 P.S. § 3244(a).

## B.

The jury also convicted Beck of failing to file an annual report on behalf of his political committee in violation of Section 1627(a) of the Code, which provides:

All political committees and candidates, including those committees and candidates filing reports under section 1626(d) and (e), shall file a report on January 31 of each year which shall be complete as of December 31 of the prior year....

25 P.S. § 3247(a).

The evidence outlined above supports a finding that Beck formed a political committee. Having formed a political commit-

---

**3.** In contrast, Stratton wrote a letter to the Board explaining that he did not have a "committee to elect." R.R. 257a., 785a.

tee, the Code not only requires registration, but also mandates that the committee file an annual report. *Id.* It is undisputed that the committee did not file the required reports. Therefore, there is sufficient evidence to establish, beyond a reasonable doubt, Beck's political committee failed to file an annual report in violation of Section 1627 of the Election Code. *Id.*

## C.

■ The jury convicted Beck of violating Section 1627(a) of the Code by filing an improper termination statement, indicating that his campaign reporting requirements were terminated, despite having more than $250 of unpaid debt. Specifically,

Each form designated by the Secretary of the Commonwealth for filing a report or statement required by section 1626(e) shall contain a block which may be marked by the candidate or political committee designating it a termination report or statement. If such report or statement is so designated, or if an authorized candidate elects to file no report or statement pursuant to section 1626.1, no annual report need be filed under this section unless contributions were received or expenditures made subsequent to the time period for filing of such termination report. *However, no candidate or political committee may terminate by way of a statement where the unpaid balance indicated in the previous report was greater than two hundred fifty dollars ($250).* In the case of annual reports said report shall cover the campaign activity of a candi-

date or political committee from the last prior report or statement.

25 P.S. § 3247(a) (emphasis added).

On October 27, 1995, Beck filed a campaign expense report listing total expenditures of $1,507.84 and total receipts of $584.00, leaving a negative balance of $923.84. R.R. 260a., 729a.–735a. Beck's next statement was an expense report for October 27 through December 7. R.R. 736a. Beck identified this report as a "termination statement." *Id.* On the report, he signed a sworn statement certifying the aggregate receipts, disbursements or liabilities incurred during the reporting period did not exceed $250. *Id.* The termination statement, however, did not clarify how the unpaid debt of $923.84 was resolved. *Id.*

Ordiway explained that, by signing the termination statement, Beck certified his campaign was at a zero balance with no unpaid debt. R.R. 251a. In addition, when Beck filed the termination statement Ordiway specifically verified with Beck that his campaign balance was zero. R.R. 259a. Consequently, Beck never explained how the negative balance from his previous statement was resolved.

Therefore, there is sufficient evidence to establish, beyond a reasonable doubt, that Beck improperly terminated his campaign "by way of statement" in violation of Section 1624(a) of the Election Code.[4] *See* 25 P.S. § 3244(a).

## II.

■ Beck also contends that the verdicts are contrary to law because he lacked

---

4. Regarding the termination statement, Beck also argues that Ordiway advised him to file a termination statement. Because he followed her advice, he lacked criminal intent, he contends. Ordiway testified, however, her statement was based upon Beck's assurances that

he had satisfied all his campaign debts. R.R. 259a. As stated, the evidence supports a contrary finding, because the prior report showed unpaid debts of more than $250, and Beck never filed an annual report explaining how the prior negative balance was resolved.

the necessary intent to commit the violations.

Relying on *In re Laub*, 145 Pa.Super. 513, 21 A.2d 575 (1941), Beck asserts his convictions cannot stand because the Commonwealth failed to prove he acted in a manner evidencing fraud or corruption. In *Laub*, private citizens filed a petition to audit the expense account of Judge Laub. Specific items subject to the audit were personal expenses, while other items were scrutinized because of the manner and form of accounting. Concluding Judge Laub placed all available campaign expenditure information upon the public record, the Court held there was no proof of fraud or corruption. Essentially, the Court determined that Judge Laub's actions were merely passive acts or omissions. Moreover, based on Judge Laub's credible testimony the Court determined "that there was no intent on his part to avoid accounting for the moneys spent by him during his campaign." *Id* at 584. Therefore, the Court denied the petition to audit.

*In re Laub* does not compel a reversal here, for several reasons. First, the holding in *Laub* was based upon a now repealed statute that specifically required evidence of fraud or corruption. The current statute enables a prosecution based upon audit findings of willful misconduct, not fraud or corruption. Second, unlike in *Laub*, here the Commonwealth prosecuted Beck for failing to file required reports. By failing to file the reports, Beck de-

prived the public of the opportunity to inspect his campaign receipts and expenditures. Third, while Judge Laub's credible testimony showed no intent to circumvent audit procedures, here, the jury did not accept Beck's exculpatory testimony. *See* Tr. Court's slip op. at 5. To the contrary, Beck's demeanor and his contempt for Election Code reporting requirements led to his ultimate convictions. *Id.*[5]

Section 1851 of the Election Code, which disqualifies a candidate who is found guilty of any violation of the Code from holding office, provides:

> Any person who shall, while a candidate for office, be guilty of bribery, fraud or *willful* violation of any provision of this act, shall be forever disqualified from holding said office or any other office of trust or profit in this Commonwealth.

25 P.S. § 3551 (emphasis added). Therefore, before the penalty of disqualification can be entered, a willful violation must be proved.

Section 1852 of the Code, which deprives any person who is found guilty of a Code violation from voting for four years, also contains a *mens rea* requirement:

> Any person convicted of the *willful* violation of any provision of this act shall, in addition to any of the penalties herein provided for, be deprived of the right of suffrage absolutely for a term of

---

5. Beck also relies on *In re "We the People" Expense Account*, 30 Del. 570 (C.C.P.1941) for the same proposition. Again, his reliance is misplaced. Like *In re Laub, "We the People"* began when private citizens filed a petition seeking an audit of a political committee. Similar to Judge Laub, the credible testimony of the committee's members revealed no intent to avoid accounting procedures. Concluding the record disclosed mere "passive acts or omissions" the court denied the petition to audit.

Like *In re Laub, We the People* is distinguishable. Here, Beck's incredible testimony and demeanor showed his intent to willfully violate the Election Code. Moreover, unlike the passive acts or omissions by committee members in *We the People*, Beck's convictions are due to his failure to file the required reports even after having been asked twice to comply before being prosecuted.

four years from the date of his conviction. . . .

25 P.S. § 3552. Therefore, before the penalty of disenfranchisement can be entered, a willful violation must be proved.

Section 1850 of the Election Code, which criminalizes Code violations, provides:

> Any person who shall violate any of the provisions of this act, for which a penalty is not herein specifically provided, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand ($1,000) dollars, or to undergo an imprisonment of not more than one (1) year, or both, in the discretion of the court.

25 P.S. § 3550. Thus, there is no explicit state of mind requirement for imprisonment or fine. Where, as here, a statute does not prescribe the culpability sufficient to establish a material element of an offense, the requirement is satisfied if a person acts knowingly as to each material element of the offense. 18 Pa.C.S. § 302(a),(c). Under Section 302(b)(2) of the Crimes Code:

> A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).

■ Pursuant to the definition of "willfully" provided in the Crimes Code, the Commonwealth had to prove beyond a reasonable doubt that Beck was aware of the applicable reporting requirements and willfully failed to file the required reports, that is, the failure to file was not done innocently or inadvertently. *See United States v. Curran*, 20 F.3d 560, 567 (3d Cir.1994) (conviction for causing election campaign treasurer to submit false reports about contributions).

Here, the evidence supports a finding that Beck "knowingly" and "willfully" violated Election Code reporting requirements so as to support all elements of the sentence. Beck began his campaign for county commissioner with the filing of nomination petitions and supporting forms. R.R. 682a.–697a. With each nomination petition Beck signed a "Candidate's Affidavit and Loyalty Oath" *affirming that he was aware of the Election Code's reporting requirements* and that he would not "knowingly violate any election law." R.R. 685a., 689a., 693a., 697a.

Thereafter, when the Board received a letter requesting information concerning the identity of the members of "The Committee to Elect Harold Beck," it sent a registered letter reminding him of the applicable registration requirements. R.R. 741a.–742a. In addition, the Board enclosed the necessary registration forms. *Id.* Although Beck signed for the letter, he did not respond.

Moreover, Beck consulted his lawyer regarding Election Code reporting requirements. R.R. 476a. His lawyer advised him that the Election Code requires registration of political committees. R.R. 476a.–477a. His lawyer further suggested that if Beck required additional clarification of the Election Code's requirements, Ordiway would assist him.

■ Finally, we observe that although fraudulent intent is not a necessary element for conviction of the statutory provi-

sions in question,[6] the record supports a finding of fraudulent conduct. Falsely denying the existence of a political committee with the intent to avoid reporting requirements and thereby obfuscate campaign receipts and expenses could be found on this record. This is fraudulent conduct as reprehensible as submitting false affidavits attesting to false signatures of electors. *See Commonwealth v. Faust,* 702 A.2d 598 (Pa.Cmwlth.1997) *appeal denied* 553 Pa. 708, 719 A.2d 747 (1998).

Considering the foregoing, the verdicts are not contrary to law.

### III.

■ While not forming a clear "weight of the evidence" argument, Beck contends the evidence showed he reported all contributions received by him or by his political committee. More specifically, he argues the trial court disregarded evidence that he acted in good faith. We disagree.

When considering a claim that the verdict is against the weight of the evidence, we are mindful that:

> [A] new trial can only be granted ... in the extraordinary situation where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Drumheller,* —— Pa. at ——, 808 A.2d at 908. (citations omitted). Further, we will not substitute our judgment for that of the finder of fact. *Id.*

Applying that standard to this case, we conclude the verdicts were not against the weight of the evidence because the outcome of the trial below does not shock our sense of justice. The jury, as fact finder, observed all of the witnesses and documen-tary evidence and concluded that Beck committed several offenses. In response to post-trial motions, the trial judge explained that the verdicts were not against the weight of the evidence. Specifically, the trial court stated,

> Finally we hearken to our comments at the time of sentencing where in we observed that the crimes Mr. Beck perceives as deminimus [sic]; and his ultimate conviction, resulted from the arrogant demeanor he displayed before his jury of peers involving charges he felt were 'bullshit'. Apparently, when he received the letter from the Board of Elections, rather than engaging in a knowing and informed analysis of the requirements of the Election Code, he chose to react in a similar 'bullshit' fashion....

Trial Court's Slip Op. at 5. Given the foregoing, one cannot say the verdicts are the product of speculation or conjecture.

### IV.

■ Beck further contends the trial court erred by failing to grant his motion to dismiss the charges as *de minimis.* In particular, he argues that because the contributions he received total a relatively small amount dismissal of the charges was proper.

■ When reviewing a claim that the trial court erred by not dismissing an infraction as *de minimis,* we evaluate the ruling for an abuse of discretion. *Commonwealth v. Lutes,* 793 A.2d 949 (Pa.Super.2002). Our courts have the discretion to remove culpable conduct from criminal liability in certain situations. *Commonwealth v. Matty,* 422 Pa.Super. 595, 619 A.2d 1383 (1993). Pursuant to that statute:

> (a) General rule.—The court shall dismiss a prosecution if, having regard to

---

**6.** *Compare* Sections 1813 and 1814 of the     Election Code, 25 P.S. §§ 3513, 3514.

the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S. § 312(a).

■ Although this section was enacted to remove petty infractions from the category of criminal conduct, its application is limited to situations where there was no harm done to either a victim or society. *Scurfield Coal, Inc. v. Commonwealth*, 136 Pa.Cmwlth. 1, 582 A.2d 694 (1990). Therefore, it is incumbent upon the trial court not to dismiss criminal conduct that is injurious to the victim or to society. *Commonwealth v. Moses*, 350 Pa.Super. 231, 504 A.2d 330 (1986).

■ Here, Beck failed to file reports that ensure public access to accurate information about the manner in which campaign money is received and spent. The Election Code contemplates the public's right to inspect a candidate's campaign finance reports. The Legislature enacted the Election Code to regulate the electoral process so that it is both orderly and fair.

*Commonwealth v. Wadzinski*, 492 Pa. 35, 422 A.2d 124 (1980). Campaign reporting requirements exist to ensure a fair election and to advise the electorate of the manner in which campaign money is spent. *Id.* The Legislature intended that expense accounts of candidates for public office be subject to close scrutiny. *In re Shapp*, 476 Pa. 480, 383 A.2d 201 (1978).

Our Superior Court has rejected the argument that exoneration may rest solely on the amount of money involved. *Matty* (rejecting contention that theft of $32 of services was *de minimis* because the legislature clearly envisioned theft of such an amount and incorporated it into the offense); *Moses* (rejecting argument that robbery of 35 cents from a child was *de minimis* because although amount seemed petty the offense included this amount). Our analysis here is consistent with this authority.

The importance of campaign reporting requirements is obvious: by preserving public access to the manner in which campaign money is received and spent, public confidence in the election process is maintained. Beck's willful refusal to comply with the registration and reporting requirements prevents verification of campaign receipts and expenses, thereby imperiling confidence in the election. This is the mischief the Legislature sought to avoid. Accordingly, we discern no abuse of discretion from the trial court's refusal to dismiss the charges as *de minimis*.[7]

For the foregoing reasons, the judgment of sentence is affirmed.

President Judge COLINS concurs in the result only.

7. Beck further suggests that the trial court misunderstood the significance of the October 1995 letter sent to Beck from the Board of Elections. Beck argues that the purpose of the letter was not to require him to file the forms, but he fails to suggest an alternative purpose or explain why this was a mistake of the trial court. Therefore, this argument lacks merit.

## ORDER

AND NOW, this 18th day of November, 2002, the order of the Court of Common Pleas of McKean County is affirmed.