In re: Petition to Audit Campaign Finance Reports of Jason DAWKINS Candidate for the 179th Legislative District.

Petition of: Shakeya Gray, Tyree Campbell, Rev. James W. Clay, Sr., Phylicia Judge, Henry Watkins, Edward Webb and Thomas Neilson.

Commonwealth Court of Pennsylvania.

Heard Aug. 6, 2014.

Decided Aug. 27, 2014.

Publication Ordered September 16, 2014.

Alexander Z. Talmadge, Jr., Philadelphia, for petitioners.

Robert T. Vance, Jr., Philadelphia, for respondents.

OPINION BY Judge COVEY.

Jason Dawkins (Dawkins) won the May 2014 Democratic primary election for state representative of the 179th Legislative District over James W. Clay, Jr. (Clay). Shakeya Gray, Tyree Campbell, Rev. James W. Clay, Sr., Phylicia Judge, Henry Watkins, Edward Webb and Thomas Neilson (Neilson) (collectively, Petitioners) filed a Petition to Audit Campaign Finance Reports of Dawkins, "Friends of Jason Dawkins," "Moving Frankford Forward 527" and "Moving Frankford Forward" (Petition)[1] in this Court's original jurisdiction pursuant to Section 1636 of the Pennsylvania Election Code (Election Code),[2] 25 P.S. § 3256. Petitioners claim that: (1) Dawkins, Thompson and Moving Frankford Forward willfully and fraudulently violated the Election Code by committing numerous campaign reporting violations as

---

1. The Petition also requested audits of the personal bank accounts of Dawkins and Moving Frankford Forward's treasurer Kisha Thompson.

2. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591. The primary and general election expense provisions in Article 16 of the Election Code (25 P.S. §§ 3241–3260b) were added by Section 2 of the Act of October 4, 1978, P.L. 893.

"Friends of Jason Dawkins"; (2) Dawkins, Thompson and Moving Frankford Forward willfully and fraudulently violated the Election Code by committing numerous campaign reporting violations as "Moving Frankford Forward 527"; and, (3) Moving Frankford Forward's union printing seal commonly known as the "union bug" was counterfeit and a fraudulent attempt to have voters believe the campaign paid for and used a union printing company to print Dawkins' campaign literature.

Dawkins and Moving Frankford Forward's treasurer Kisha Thompson (Thompson) (collectively, Respondents) answered the Petition. Respondents denied Petitioners' allegations, although they admitted that Moving Frankford Forward originally existed as an Internal Revenue Service (IRS) tax exempt 527 organization and stated that they had no knowledge of a campaign or political action committee under the name "Friends of Jason Dawkins."

Pursuant to this Court's June 30, 2014 order, Pennsylvania's Department of State (Department) certified that Moving Frankford Forward filed the following campaign finance reports:

a. 2014 24–Hour Campaign Finance Report (Cert. No. 2014–125B);

b. 2014 24–Hour Campaign Finance Report (Cert. No. 2014–126B);

c. 2014 2nd Friday Pre–Primary Campaign Finance Report (Cert. No. 2014–123B);

d. 2014 30–Day Post–Primary Campaign Finance Report (Cert. No. 2014–111B); and,

e. 2013 Annual Campaign Finance Report (Cert. No. 2014–122B).

Department's July 9, 2014 Certification (Dep't Cert.) at 1. The Department further certified that "[n]o campaign finance reports for Jason Dawkins, 'Friends of Jason Dawkins,' or 'Moving Frankford Forward []527[]' ha[d] been filed with the [Department]" as of July 9, 2014. Dep't Cert. at 2.

### Campaign Finance Report Audit

The Pennsylvania Supreme Court has explained:

> [T]he audit is the instrument that triggers the enforcement mechanism of the Election Code. The scope of these audits is not limited to whether the candidate's return is arithmetically correct; but extends to a determination of whether 'any person, whether a candidate or not, has accepted contributions or incurred expense or has expended or disbursed money in contravention of this act, or has otherwise violated *any* of the provisions of this act.' [Section 1611(c)] [of the Election Code], 25 P.S. [§] 3231(c) [3] (emphasis added).

*Brunwasser v. Fields,* 487 Pa. 283, 409 A.2d 352, 354 (1979). This Court has made clear:

> The Election Code reporting requirements carry out the evident legislative intent that expense accounts of candidates for public office be subject to the closest scrutiny.... In *Commonwealth v. Beck,* 810 A.2d 736 (Pa.Cmwlth.2002), we explained:
>
> > The importance of campaign reporting requirements is obvious: by preserving public access to the manner in which campaign money is received and spent, public confidence in the election process is maintained. [Can-

---

3. "This [S]ection was repealed effective January 1, 1979, by the Act of October 4, 1978, P.L. 893, ..., and reenacted in substantially the same form at 25 P.S. [§] 3256 (Supp. 1979–80) and became effective upon campaign financing occurring after January 1, 1979." *Brunwasser v. Fields,* 487 Pa. 283, 409 A.2d 352, 353 n. 2 (1979).

didate's] willful refusal to comply with the registration and reporting requirements prevents verification of campaign receipts and expenses, thereby imperiling confidence in the election. This is the mischief the Legislature sought to avoid....

*Id.* at 746.

An audit is the enforcement mechanism used to carry out that intent.... If a trial court determines upon reviewing the audit that any person has accepted contributions, incurred expenses, expended or disbursed money in contravention of the Election Code or otherwise violated any provision of the Election Code, the trial court shall certify its decision to the appropriate prosecutorial officer who shall institute criminal proceedings as deemed necessary. [*See* Section 1636(b) of the Election Code, 25 P.S. § 3256(b).] If a candidate is found by any court of this Commonwealth in criminal proceedings to have willfully accepted contributions or made any expenditure in contravention of the Election Code, the candidate may be subject to such penalties as forfeiture of office. [*See* Section 1637 of the Election Code, 25 P.S. § 3257.] However, '[i]t can fairly be said that the legislature did not intend all violations—e.g., minor or trivial infractions—of the Election Code to be the basis for such harsh penalties as forfeiture of office or criminal prosecutions.' *Brunwasser,* ... 409 A.2d at 356.

*In re: Petition to Audit Campaign Fin. Reports of Cartwright,* 900 A.2d 448, 453 (Pa.Cmwlth.2006) (citations and footnotes omitted).

This Court conducted a hearing on August 6, 2014 in Philadelphia at which time Petitioners' counsel presented evidence in support of Petitioners' claims. Petitioners first called Thompson as a witness. Thompson confirmed Petitioners' claim that Moving Frankford Forward was originally formed in June 2013 as a "527." Thompson testified that on June 10, 2013, she filed on Moving Frankford Forward's behalf IRS Form 8871 (Political Organization Notice of Section 527 Status) for exemption from filing IRS Form 990 (Return of Organization Exempt from Income Tax). Petition Ex. B. Moving Frankford Forward, with IRS 527 status, filed its initial Political Committee Registration Statement with the Department on June 14, 2013. Petition Ex. C.

Thompson explained that on January 14, 2014, after she received information from the Department regarding Moving Frankford Forward supporting a specific candidate, she filed an amended Political Committee Registration Statement with the Department designating Moving Frankford Forward as candidate Dawkins' authorized campaign committee. Moving Frankford Forward's authorized chairperson is D'Andra Lewis. Thompson is its authorized treasurer. *See* Hearing Exs. R–1, R–2. Thompson stated that, thereafter, Moving Frankford Forward did not exist as a 527. She also represented that Moving Frankford Forward did not coordinate with any candidate's campaign before it became candidate Dawkins' authorized campaign committee in January 2014. Thompson testified that she attended campaign finance report training, and regularly contacted the Department when she had recording and reporting questions.

Thompson recounted that Moving Frankford Forward received a loan from Joanna McClain (McClain) in the amount of $5,000.00, which was recorded as an unpaid debt on Schedule IV of Moving Frankford Forward's 2014 2nd Friday Pre–Primary Report. *See* Petition Ex. D; Dep't Cert. at 26. Thompson also ac-

knowledged that Moving Frankford Forward received a loan from Dawkins in the amount of $5,006.39, which was recorded as an unpaid debt on Schedule IV of Moving Frankford Forward's 2014 2nd Friday Pre–Primary Report. *See* Petition Ex. D; Dep't Cert. at 26. Thompson explained that the Moving Frankford Forward expenses for which Dawkins' loan was made were recorded and itemized.

According to Thompson, she issued 3 or 4 checks on behalf of Moving Frankford Forward to Dynagraphix Media for Dawkins' print advertising. *See* Dep't Cert. at 23, 25, 39–40. She confirmed that Dynagraphix Media is a union printer and that its print advertising for Dawkins' campaign literature contained the union bug. She declared that there is not and has never been a candidate authorized committee known as "Friends of Jason Dawkins," and at no time was she treasurer of any such committee. Thompson admitted that Moving Frankford Forward's original advertising on mailing cards and pamphlets reflected that it was "Paid for by Friends of Jason Dawkins—Kisha Thompson, Treasurer." Petition Ex. A. She explained that the Friends of Jason Dawkins reference on those materials was a printer's error, and that they should have reflected that they were "Paid for by Moving Frankford Forward—Kisha Thompson, Treasurer."

Thompson stated that the inaccurate campaign advertising materials were mailed to voters' homes in the 179th Legislative District, and others were distributed by hand before the error was detected. Thompson acknowledged that although she issued the checks for the erroneous campaign advertising materials, she did not design the ads, approve the copy or examine their accuracy before they were distributed because that was beyond her responsibilities as committee treasurer.

Thompson testified that she was not aware the materials were incorrect until she received the Petition in this litigation because she did not read the literature's fine print.

Thompson maintained that she attempted at all times to perform her duties as treasurer to the best of her ability, that Moving Frankford Forward's campaign finance reports were accurate, and that she did not have any intent to and did not believe she violated the Election Code. This Court found Thompson to be open and honest throughout her testimony. Accordingly, this Court deems credible Thompson's testimony relating to her training; the amendment of "Moving Frankford Forward 527" to Moving Frankford Forward as a candidate authorized committee; the printing error depicting "Friends of Jason Dawkins—Kisha Thompson, Treasurer"; and, Moving Frankford Forward's campaign finance reporting, specifically relating to the McClain and Dawkins' loans.

Petitioners next called Dawkins as a witness. Dawkins testified that when he decided to run for office, he attended Election Code and campaign reporting training at City Hall. He also explained that he conducted online research to familiarize himself with the law. Dawkins acknowledged his responsibility to abide by the Election Code.

Dawkins confirmed that he loaned Moving Frankford Forward $5,006.39 at its inception in January 2014 to cover up-front costs (i.e., volunteer and office expenses) until contributions were received. He described that Thompson kept receipts and an itemized list of the committee's expenses covered by his loan. He stated that his loan was properly reported on Moving Frankford Forward's campaign finance reports. *See* Petition Ex. D; Dep't Cert. at 26. He also testified that he re-

ported the loan on his candidate campaign finance reports.

 Dawkins acknowledged that his Cycle 2 and Cycle 3 candidate reports were filed on July 17, 2014,[4] after the Department notified him that his reports were overdue, and that he owed late fees. He admitted that he disregarded the first Department notice because he thought that since Moving Frankford Forward had reported the loan, he did not also have to report it. However, after he received the second late notice, he realized he was required to separately report the loan on an individual candidate's report, which he did immediately. Dawkins' Cycle 2 and Cycle 3 candidate filings are public records maintained on the Department's website. This Court takes judicial notice that the Department's website substantiates Dawkins' testimony. He indeed reported the $5,006.39 loan to Moving Frankford Forward, with an itemization of expenditures, and paid $250.00 in fines as a result of his late filings.

Dawkins declared that his only candidate authorized campaign committee was Moving Frankford Forward, with Thompson as treasurer. He did not authorize any other committee to collect contributions or make expenditures on his behalf. He explained that when he first became a candidate, there was discussion about calling his candidate political committee "Friends of Jason Dawkins" and someone other than Thompson was to be treasurer. Although "Friends of Jason Dawkins" never materialized, Dynagraphix Media mistook that potential committee's information with that of Moving Frankford Forward and the result was an initial postcard and pamphlet printing error denoting that the advertising was paid for by "Friends of

Jason Dawkins—Kisha Thompson, Treasurer." *See* Petition Ex. A.

Dawkins admitted that hundreds of the misprinted postcards and pamphlets had been distributed before he detected the error some time in April 2014. He claimed that he immediately contacted Dynagraphix Media, pointed out the error, and ensured that all future campaign materials printed and distributed to voters in the 179th Legislative District thereafter correctly reflected that they were paid for by "Moving Frankford Forward—Kisha Thompson, Treasurer." Dawkins stated that due to the intense nature of the primary campaign, he spent most of this time campaigning in public. Accordingly, he had to trust his staff and the committee to take care of details like reviewing print copy. In that process, the error was overlooked. Dawkins acknowledged that as the candidate, he was ultimately accountable for what was distributed to the public, and he accepted full responsibility for the inaccuracy. Dawkins confirmed that Dynagraphix Media is a union printer, and that the print advertising properly contained the union bug.

Dawkins also admitted that he authorized his billboard advertising. However, because his focus was on the billboards getting erected before the election, he could not specifically state whether the "Paid for by Moving Frankford Forward—Kisha Thompson, Treasurer" language was visible at the bottom of the billboards after they were installed.

Dawkins asserted that at all times relevant to his campaign he attempted to comply with the Election Code to the best of his ability. He reviewed and signed all required Moving Frankford Forward's campaign finance reports. He was proactive in getting campaign finance reporting

---

4. Dawkins' testimony clarified the reason that the Department's July 9, 2014 certification did not reflect his individual candidate reports.

training and researching what was required of him as a candidate, and when errors occurred he immediately fixed them. He testified that he never knowingly violated the law, and did not direct anyone else to do so. This Court found Dawkins to be open and honest throughout his testimony. Accordingly, this Court deems credible Dawkins' testimony relating to: his training; Dynagraphix Media's status as a union printer, and its use of the union bug; the printing error depicting "Friends of Jason Dawkins—Kisha Thompson, Treasurer" and his efforts to correct the misprint; his individual and Moving Frankford Forward's campaign finance reporting, specifically relating to his loan; and the billboard advertising.

Lastly, Petitioners called Neilson, Clay's campaign manager, to testify on their behalf. Neilson testified that he saw a billboard containing Dawkins' campaign advertising before the primary election which did not clearly reflect who authorized and paid for it, as required by the Election Code. Although Neilson recalled seeing other Dawkins' campaign billboards and pamphlets with incorrect information, he did not provide specific details. Neilson acknowledged that the billboard he observed was 20 feet off the ground, and since he did not erect the billboard and could not confirm whether it was framed, he could not say for certain whether an authorization as to who paid for it was visible at the bottom. Petitioners sought to admit into evidence a photograph as representative of the billboard about which Neilson testified. Neilson admitted that he did not take the photograph. Respondents' counsel objected to the photograph's admission into evidence because the photograph was not authenticated.

The Pennsylvania Supreme Court explained:

[A] trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect. The offering party must authenticate such evidence. 'The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' [Pennsylvania Rule of Evidence (Pa.R.E.)] 901(a). Demonstrative evidence may be authenticated by testimony from a witness who has knowledge 'that a matter is what it is claimed to be.' Pa. R.E. 901(b)(1). Demonstrative evidence such as photographs ... have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict.

*Commonwealth v. Serge,* 586 Pa. 671, 896 A.2d 1170, 1177 (2006) (citation omitted). Because Petitioners did not authenticate the photograph as required by the Pennsylvania Rules of Evidence, it is not admitted into evidence. This Court deems credible Neilson's testimony that he saw a billboard on which he did not see the words "Paid for by Moving Frankford Forward—Kisha Thompson, Treasurer." However, the Court concludes that no probative evidence was presented that the billboard did not in fact contain the required authorization.

### Standing

■ At the conclusion of Petitioners' case and after each party presented closing arguments, Dawkins and Thompson's counsel asserted that Petitioners presented no evidence that Petitioners had standing to file the instant Petition and therefore the Petition should be dismissed. "In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action." *Stilp v. Commonwealth of*

*Pennsylvania,* 596 Pa. 62, 940 A.2d 1227, 1233 (2007). Because standing is a dispositive issue, the Court will address it first. In *Brunwasser,* the Pennsylvania Supreme Court explained:

> All that is needed to force an audit of the target's campaign finances is a petition signed by five electors of the political division concerned. [Section] 1611(a) [of the Election Code], 25 P.S.[§] 3231(a).[FN4]

---

[FN4] Bitter acrimony often accompanies hotly contested elections. The statutory requirement of a petition signed by five electors is one method by which the legislature sought to avoid spite suits instituted by defeated candidates and their supporters.... [O]btaining the signatures of five electors is a nominal requirement in view of the objective it is designed to achieve, i.e., to assure legitimacy of the litigation; to avoid harassment and discourage vexatious litigation....

*Id.* at 355.[5]

This proceeding was conducted in accordance with Section 1636(a) of the Election Code, which authorizes "any five (5) electors of the Commonwealth or of the political division" to file an election audit petition in this Court's original jurisdiction. 25 P.S. § 3256(a). The Election Code does not define "elector." However, "qualified elector" is defined as "any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." 25 P.S. § 2602. Section 701 of the Election Code further provides:

> Every citizen of this Commonwealth eighteen years of age, possessing the following qualifications, shall be entitled to vote at all elections, provided he or she has complied with the provisions of the acts requiring and regulating the registration of electors:
>
> (1) He or she shall have been a citizen of the United States at least one month.
>
> (2) He or she shall have resided in the State ninety days immediately preceding the election.
>
> (3) He or she shall have resided in the election district where he or she shall offer to vote at least thirty days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within thirty days preceding the election.

25 P.S. § 2811.

■ Here, Petitioners averred in the Petition that they "are registered electors of the Democratic Party in the 179th Legislative District." Petition at ¶ 2. Respondents answered that they "are without knowledge or information sufficient to form a belief as to the truth of" Petitioners' standing claim "and strict proof thereof is demanded at the hearing on the Audit Petition." Ans. to Petition at ¶ 2. Only Neilson executed the Verification attached to the Petition affirming the Petition's contents. The other 6 Petitioners provided no testimony or documentary evidence at the hearing to establish that they are, in fact, electors of the Commonwealth. Without such proof, the Court cannot determine whether Petitioners meet the Election Code's age and/or residency requirements. Because Petitioners did not prove that they are electors authorized by Section 1636(a) of the Election Code to petition for the audit of Dawkins and Moving Frankford Forward's campaign finance reports,

---

5. Although *Brunwasser* refers to repealed Section 1611 of the Election Code, the explanation is nevertheless applicable. *See supra* note 3.

they did not establish standing. Accordingly, the Petition is dismissed.

## Petition

In light of the seriousness of the allegations contained in the Petition and Petitioners' failure to prove that Dawkins, Thompson and/or Moving Frankford Forward willfully or fraudulently violated the Election Code, this Court will address the issues raised therein.

### (1) "Friends of Jason Dawkins"

Petitioners argue that "Friends of Jason Dawkins" was a fraudulent political committee created in violation of the Election Code without a named chairperson. In addition, it accepted campaign contributions, and made expenditures and paid for campaign pamphlets distributed by Dawkins during the primary election without filing required campaign finance reports. Petitioners further contend that the Val Arkoosh Campaign for Congress shared or rented office space for Dawkins' campaign, but there is no record of in-kind or direct contribution to Dawkins' campaign.

Petitioners also aver that Thompson, as treasurer of "Friends of Jason Dawkins," committed willful campaign finance law violations by failing to obtain Dawkins' authorization to operate on his behalf, not registering the committee with the Department, not designating a chairperson, accepting contributions and making expenditures on its behalf, and intentionally failing to file campaign finance reports. Petitioners further contend that Dawkins accepted campaign donations from "Friends of Jason Dawkins" with the knowledge that it was an unregistered and illegally formed political committee, that he authorized the coordination of his campaign with "Moving Frankford Forward 527," and that he intentionally failed to file campaign finance reports. They also argue that Dawkins' political advertisements, including the billboards, failed to disclose the person, organization or political committee that authorized and purchased it.

There is no question that the Election Code strictly governs political committees. " '[P]olitical committee' " is defined therein as "any committee, club, association or other group of persons which receives contributions or makes expenditures." 25 P.S. § 3241(h). " 'Candidate's [p]olitical [c]ommittee' shall mean any political committee formed on behalf of a specified candidate and authorized by said candidate." 25 P.S. § 3241(m).

In order to be a valid political committee authorized to receive money on a candidate's behalf, the political committee must have a chairperson and a treasurer who may not be the same person. 25 P.S. § 3242(a). Only the treasurer or designated assistant treasurers may receive and disburse money for the political committee. 25 P.S. § 3242(a)-(b). The treasurer may not receive money on a candidate's behalf unless the candidate's "written authorization [has been] filed with the appropriate supervisor[.]" [6] 25 P.S. § 3243.

Once a political committee has received an aggregate of $250.00 in contributions on a candidate's behalf, it "shall file a registration statement, designed by the Secretary of the Commonwealth, with the appropriate supervisor within twenty (20) days after the date on which it receives such amount." 25 P.S. § 3244(a). "No political committee which receives an aggregate amount of contributions of two hundred fifty dollars ($250) or more may make a contribution to any candidate or political committee unless it has registered

---

**6.** Section 1621(j) of the Election Code defines "supervisor" as "the Secretary of the Com-monwealth or the respective county boards of elections." 25 P.S. § 3241(j).

with the appropriate supervisor." 25 P.S. § 3244(d).[7]

The $250.00 threshold also triggers campaign finance reporting to the Department as detailed in Sections 1626 and 1631 of the Election Code, 25 P.S. §§ 3246, 3251.[8] According to the Department's Certification, the 2014 Primary Campaign Finance Report Deadlines for state representative candidates were:

- 2013 Annual Report—January 31, 2014
- Second Friday Pre–Primary—May 9, 2014
- 30–Day Post–Primary—June 19, 2014
- 24–Hour Reporting—daily from May 6 to May 20, 2014 [9]

Section 1629(a) of the Election Code states:

> Each report shall be subscribed and sworn to by the individual submitting the report. In addition, any report filed by a political committee, authorized by a candidate and created solely for the purpose of influencing an election on behalf of that candidate, must be accompanied by an affidavit from that candidate which provides that, to the best of the candidate's knowledge, the political committee has not violated any provision of this act.

25 P.S. § 3249(a).

Pertaining to campaign advertising, Section 1638(a) of the Election Code provides:

> Whenever any person makes an expenditure for the purpose of financing communications expressly advocating the election or defeat of a candidate ... through any ... outdoor advertising facility, direct mailing, or any other type of general public political advertising, such communication:
>
> (1) If authorized by the candidate, his authorized political committee or their agents, shall clearly and conspicuously state that the communication has been authorized.
>
> (2) If not authorized by a candidate, his authorized political committee, or their agents, shall clearly and conspicuously state the name of the person who made or financed the expenditure for the communication, including, in the case of a political committee the name of any affiliated or connected organization.

25 P.S. § 3258(a).

The evidence presented in this case supports Petitioners' claim that although "Friends of Jason Dawkins" was not a valid political committee, it nevertheless was represented as paying for some of Dawkins' campaign advertising. The Department certified that, as of July 9, 2014, it had no record of "Friends of Jason Dawkins" as a registered political committee. Dawkins also credibly testified that although "Friends of Jason Dawkins" was initially considered as the name for his candidate authorized committee with a treasurer other than Thompson, ultimately, Moving Frankford Forward was his only authorized committee. However, in the process of establishing Moving Frankford Forward with Thompson as treasurer, Dynagraphix Media captured the name of

---

**7.** Candidates and political committees must nevertheless record all contributions exceeding $10.00 pursuant to Section 1622(c) of the Election Code.

**8.** For amounts that do not exceed $250.00, the candidate or the committee treasurer "shall file a sworn statement to that effect with the appropriate supervisor rather than the report required by this section." 25 P.S. § 3246(a).

**9.** 24–Hour Reporting refers to contributions or pledges of $500.00 or more made after the final pre-election report has been completed. *See* 25 P.S. § 3248.

the initially-considered committee and the newly-designated treasurer and misprinted the advertising materials in that manner. Both Thompson and Dawkins honestly testified that "Friends of Jason Dawkins" never existed as Dawkins' candidate authorized committee, and Thompson was never treasurer of any such entity. They both credibly pronounced that no entity named "Friends of Jason Dawkins" collected money or made expenditures related to Dawkins' campaign.[10] Accordingly, the Department would have no campaign finance reports or record for "Friends of Jason Dawkins." Petitioners supplied no evidence to the contrary. Moreover, Petitioners failed to produce any probative evidence that billboard advertisements by Moving Frankford Forward failed to disclose the person, organization or political committee that authorized and purchased them.

The Election Code clearly provides that violations of its campaign finance reporting provisions can subject the violators to criminal charges based upon certification by this Court. Section 1636(a) of the Election Code states, in pertinent part:

> If upon the audit, the court shall decide that the report was false in any substantial manner, or that any expenses have been incurred in contravention of this act, the costs of said audit shall be paid by the filer of the report, otherwise the court shall make such order as to payment of costs as shall be just in the circumstances.

25 P.S. § 3256(a). Section 1636(b) of the Election Code provides:

> If the court shall decide upon the audit that any person, whether a candidate or not, has accepted contributions or in-

curred expense or has expended or disbursed money in contravention of [the Election Code], or has otherwise violated any of the provisions of [the Election Code], it shall certify its decision to the appropriate prosecutorial officer [11] and it shall thereupon be the duty of such officer to institute criminal proceedings as he or she shall deem necessary.

25 P.S. § 3256(b).

Section 1636 of the Election Code enumerates consequences for campaign finance reporting that is "false in any **substantial** manner." 25 P.S. § 3256(a) (emphasis added). However, this Court may determine that an Election Code violation is *de minimus*. *In re Audit of Campaign Expenses*, 747 A.2d 1262 (Pa. Cmwlth.2000) (candidate's failure to report postcard printing expenditures while attempting to get the invoice and later rectified the exclusion was not substantial); *see also Radich v. Habay* (Pa. Cmwlth. No. 316 M.D. 2004, filed November 4, 2004). The *Brunwasser* Court clarified:

> It can fairly be said that the legislature did not intend all violations [(e].g., minor or trivial infractions of the Election Code[)] to be the basis for such harsh penalties as forfeiture of office or criminal prosecutions.... Here, as elsewhere in our law, the doctrine of *[d]e minimus non curat lex* [ ] is fully applicable. To prevent potential injustice resulting from a mechanical application of the penalty provisions, the decision to seek forfeiture or prosecution was given to public officials who are called upon to make such decisions in the regular course of carrying out their official responsibilities. In this manner, the legis-

---

**10.** Moving Frankford Forward's campaign finance reports showed that it had paid Dynagraphix Media for advertisement in March and April 2014. Dep't Cert. at 23, 25.

**11.** The Attorney General or county district attorney. *See* 25 P.S. §§ 3241(i), 3260b.

lature called for the weeding out of those violations not warranting forfeiture of office or criminal prosecution. *Id.* at 356 (emphasis added).

Moreover, in order for Dawkins and Thompson to be subject to criminal sanctions for Election Code violations, they must have acted knowingly or willfully. In *Commonwealth v. Beck*, 810 A.2d 736 (Pa. Cmwlth.2002), this Court explained:

Section 1851 of the Election Code, which disqualifies a candidate who is found guilty of any violation of the [Election] Code from holding office, provides:

Any person who shall, while a candidate for office, be guilty of bribery, fraud or *willful* violation of any provision of this act, shall be forever disqualified from holding said office or any other office of trust or profit in this Commonwealth.

25 P.S. § 3551 (emphasis added). Therefore, before the penalty of disqualification can be entered, a willful violation must be proved....

Under Section 302(b)(2) of the Crimes Code:

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).

Pursuant to the definition of '**willfully**' provided in the Crimes Code, the Commonwealth had to prove beyond a reasonable doubt that [the candidate] was aware of the applicable reporting requirements and willfully failed to file the required reports, that is, the **failure** to file **was not done innocently or inadvertently.**

*Id.* at 743–44 (bold and underline emphasis added). This Court in *Cole v. Evanina*, 139 Pa.Cmwlth. 219, 590 A.2d 72 (1991), held that where the printer of a candidate's newspaper advertisement misstated the endorsement, the candidate's testimony regarding his immediate correction was deemed credible, and there was no evidence to the contrary, no violation of Section 1638(a) of the Election Code occurred.

Although the evidence reveals that Dawkins' initial campaign advertising reflected that it was paid for by an invalid committee, under the circumstances, this Court deems this violation by Dawkins, Thompson and/or Moving Frankford Forward *de minimis* because Petitioners did not prove that Dawkins, Thompson and/or Moving Frankford Forward acted knowingly and there was no evidence of a willful Election Code violation. Rather, Petitioners' evidence demonstrated that Dawkins and Thompson attempted to make sure they did not violate the law by proactively attending campaign finance reporting training and seeking answers from the Department when they had questions. Only Moving Frankford Forward received contributions and made expenditures for Dawkins' campaign, and Moving Frankford Forward properly filed its campaign finance reports with the Department.

Although neither Thompson nor Dawkins noticed the erroneous reference on the advertising materials, the Election Code does not require Thompson to inspect the literature as part of her treasurer duties.[12] Dawkins acknowledged that

12. Section 1622 of the Election Code merely requires that a political committee's treasurer

as the candidate, he should have looked more carefully at the advertising, but his campaign activities obligated him to depend upon his committee for its compliance with the Election Code. He accepted full responsibility for the error and, immediately upon being made aware of the error corrected it, and all future advertising distributed to the same voters contained the correct information. Petitioners suggested that the advertising error could have been misleading to voters, but provided no evidence to prove that any voters were harmed or that Dawkins, Thompson or Moving Frankford Forward intended such a result. Ultimately, the Department's records clearly reflect that the advertising was paid for, and timely and properly reported by Moving Frankford Forward, which was the valid, registered committee authorized by Dawkins.

In regard to Dawkins not timely filing his candidate campaign finance reports, when he became aware that he had to, he filed the necessary documents and paid the assessed fine. Because Dawkins corrected his error immediately, there is no evident prejudice to anyone, and the law clearly anticipates and contains a vehicle for delayed filings in Section 1632(a) of the Election Code, 25 P.S. § 3252(a), Dawkins' late-filed candidate campaign finance report does not constitute a substantial Election Code violation.

Moreover, Petitioners produced no evidence that Dawkins, Thompson or Moving Frankford Forward did anything fraudulent or misleading. "Fraud" is not specifically defined in the Election Code. However, this Court has held:

> With respect to 'fraud,' a term not defined, Section 1903(a) of the Statutory Construction Act of 1972 advises that where a word is not defined in the stat-ute but the word has acquired a peculiar and appropriate meaning, it shall be construed according to such peculiar and appropriate meaning for definition. 1 Pa.C.S. § 1903(a). 'Fraud' certainly has acquired a peculiar and appropriate meaning in the law. We turn to Black's Law Dictionary 594 (5th ed. 1979) for a definition and find one that is sufficiently simple and broad to answer our purpose: '[a]ny kind of artifice employed by one person to deceive another.'

*Chatham Racquet Club v. Commonwealth,* 127 Pa.Cmwlth. 209, 561 A.2d 354, 357 (1989) (quoting *Commonwealth v. Nat'l Apartment Leasing Co.,* 108 Pa.Cmwlth. 300, 529 A.2d 1157, 1160–61 (1987)). "Fraud" is defined in *Black's Law Dictionary* (9th ed. 2009) as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *Id.* at 731. There being no evidence in this case that Dawkins, Thompson or Moving Frankford Forward intended to mislead or defraud voters, or evidence of any substantial Election Code violation, this Court finds only a *de minimis* Election Code violation related to the "Friends of Jason Dawkins" printing error.

Finally, despite Petitioners' allegation that there was a campaign finance reporting violation related to shared or rented office space provided by the Val Arkoosh Campaign for Congress, Petitioners supplied no evidence in support of their claim. Notwithstanding, according to the Department's documents, Moving Frankford Forward's 2014 2nd Friday Pre–Primary Campaign Finance Report reflects a March 24, 2014 contribution of $2,600.00 from "Friends of Val Arkoosh." *See* Dep't Cert. at 15. Moving Frankford Forward's

---

receive all contributions, make all expenditures and retain records thereof. There is no statutory requirement that a treasurer review and approve print advertising copy.

2014 30–day Post–Primary Campaign Finance Report reflects a May 7, 2014 contribution of $5,000.00 from "Friends of Val Arkoosh." Dep't Cert. at 32. Thus, this Court finds no Election Code violation related to Moving Frankford Forward's reporting of contributions from the Val Arkoosh Campaign for Congress.[13]

### (2) "Moving Frankford Forward 527" v. Moving Frankford Forward

Petitioners declared that Moving Frankford Forward and "Moving Frankford Forward 527," political committees registered by Thompson, violated the Election Code in that "Moving Frankford Forward 527" contributed to or expressly advocated for Dawkins or Moving Frankford Forward. They also averred that Moving Frankford Forward's Statement of Unpaid Debts itemized debts of $5,006.39 from Dawkins and $5,000.00 from McClain, yet Moving Frankford Forward's campaign finance report does not mention such loans. See Petition Ex. D. Petitioners assert that if the debts are not substantiated, they are unlawful, misleading or otherwise an Election Code violation. Petitioners' claims are unsupported by the evidence.

Thompson credibly testified that Moving Frankford Forward was originally formed as a "527." However, she explained that after she was informed by the Department in January 2014 regarding supporting and receiving funds on behalf of a specific candidate, she filed an amended registration for Moving Frankford Forward to become Dawkins' candidate authorized committee. See also Hearing Exs. R–1, R–2. According to her undisputed testimony, Moving Frankford Forward did not coordinate with any particular candidate's campaign before it became a candidate authorized committee for Dawkins in January 2014.

Thompson and Dawkins confirmed that Moving Frankford Forward received a loan from McClain in the amount of $5,000.00, and a loan from Dawkins in the amount of $5,006.39, both of which were recorded and reported as required by the Election Code. See Petition Ex. D; Dep't Cert. at 26. They further testified that the expenses for which Dawkins' loan was made were recorded and itemized and, as Dawkins represented, were submitted to the Department on July 17, 2014 with his Cycle 2 and Cycle 3 candidate campaign finance reports.

Based upon this undisputed evidence, this Court finds no Election Code violation related to the reporting of contributions by "Moving Frankford Forward 527" and/or Moving Frankford Forward.

### (3) The Union Bug

In their Petition, Petitioners contend that the union printing bug on Dawkins' campaign advertising was counterfeit, misleading and fraudulent, and was intentionally made unrecognizable so as to prevent detection of its true source. At the hearing, Petitioners' only witnesses on this issue were Thompson and Dawkins who specifically testified that Moving Frankford Forward paid Dynagraphix Media for all of its printing, that Dynagraphix Media is a union printer and that the advertising materials clearly contained the union bug. Petitioners provided no evidence to the contrary. Thus, this Court finds no Election Code violation related to Moving

13. Petitioners contend that this Court should audit Dawkins and Thompson's personal bank accounts to the extent that they were used for Dawkins' campaign; however, they did not produce any evidence or argument on this issue at the hearing. There being no factual or legal basis upon which this Court may examine their personal accounts, the Court declines to do so.

Frankford Forward's use of the union bug on Dawkins' advertising materials.

## Conclusion

Based upon the foregoing record evidence, Petitioners proved only that Dawkins and/or Moving Frankford Forward committed a *de minimis* Election Code violation relative to the printed advertising materials purportedly authorized by "Friends of Jason Dawkins." Thus, even if Petitioners had established standing, they would not have prevailed on their Petition in light of their failure to produce any evidence establishing that Dawkins, Thompson and/or Moving Frankford Forward committed a substantial, knowing or willful violation of the Election Code's campaign finance reporting requirements.

*ORDER*

AND NOW, this 27th day of August, 2014, the Petition to Audit Campaign Finance Reports of Jason Dawkins, "Friends of Jason Dawkins," "Moving Frankford Forward 527" and "Moving Frankford Forward" filed by Shakeya Gray, Tyree Campbell, Rev. James W. Clay, Sr., Phylicia Judge, Henry Watkins, Edward Webb and Thomas Neilson (Petitioners) is dismissed.

Audit costs shall be paid by Petitioners.