J-S12019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOMENIC TRICOME, | |
| Appellant | No. 2131 EDA 2015 |

Appeal from the Judgment of Sentence of June 11, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002821-2013

BEFORE:  MUNDY, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 08, 2016**

Appellant, Domenic Tricome, appeals from the judgment of sentence entered on June 11, 2015.  We affirm.

The trial court ably explained the underlying facts of this case:

> At the June 11, 2015 bench trial, Appellant stipulated to the following facts as set forth in the affidavit of probable cause, which were read into the record.  On July 24, 2012, Appellant was arrested for terroristic threats and[,] during the course of that arrest, Appellant had contact with Detective William Mitchell of the Montgomery County Detective Bureau.  On August 2, 2012, Magisterial Judge Maruszczak ordered Appellant to undergo a psychiatric evaluation by the Montgomery County Emergency Services ("MCES") and to follow their recommendations for treatment as a requirement of bail.  Appellant agreed to the bail conditions.  MCES staff contacted Appellant and visited him to evaluate his mental status.
>
> On August 16, 2012, Detective Mitchell received a letter *via* fax to the Montgomery County Detective Bureau from Appellant.  Therein, Appellant claimed that he recorded the

*Retired Senior Judge assigned to the Superior Court.

telephone conversations he had with MCES staff because he could not trust MCES or Detective Mitchell. He specifically wrote, "I have the calls on tape."

On August 17, 2012, Detective Mitchell received a subsequent letter from Appellant *via* fax. In this letter, Appellant [made] the same accusations against MCES. He claim[ed] that he [could] prove [that lies] were told about him [and that he could do so] with audiotapes of the telephone conversations between MCES staff and himself. Appellant also related that he did not trust the District Attorney's Office or MCES, so he made duplicates of his tapes of the telephone conversations.

After receiving the second letter, Detective Mitchell contacted MCES and spoke with Tyler Ludwig, the MCES member who had telephone conversations with Appellant pursuant to his bail conditions. Mr. Ludwig stated that he had several telephone conversations with Appellant to schedule a home visit as well as an evaluation for him with one of the doctors at MCES.

During one of the conversations, Mr. Ludwig stated that Appellant told him that he was recording their conversation. This statement was in the middle of their conversation. Mr. Ludwig did not consent to the recording of the conversation, nor did Appellant provide the appropriate warnings at the beginning of the conversation. Mr. Ludwig stated he never gave Appellant consent to record any conversation.

On August 21, 2012, members of the Montgomery County Detective Bureau and the Upper Marion Police Department executed a search warrant at Appellant's apartment. As a result of the search, 120 audiotapes were seized, along with computer hard drives and an audio recording device. A review of the audiotapes reveal hundreds of illegal, surreptitiously recorded conversations using Appellant's home telephone line.

Detective Mitchell reviewed tapes one through 28, which date from January 2011 through August [] 2012. During the months of January 2011 through March [] 2011, a total of 153 calls were recorded. During the months of April 2011 through June 2011, a total of 38 calls were recorded.

During the months of July 2011 through September 2011, a total of 37 calls were recorded. During the months of October 2011 through December 2011, a total a total of 31 calls were recorded. During the months of January 2012 through March 2012, a total of 41 calls were recorded. During the months of April 2012 through June 2012, a total of 41 calls were recorded. During the months of July 2012 through the execution of the search warrant on August 21, 2012, a total of 38 calls were recorded. These recorded calls were made to various people, including Appellant's friends, apartment complex employees, law offices, various court personnel, pharmacy workers[,] and various other individuals.

On August 24, 2012, a hearing was held in the Montgomery County Court of Common Pleas at Appellant's request. During the hearing[,] Appellant made an unsolicited statement that he "recorded all of his calls." Appellant also admitted in briefs to [the trial c]ourt that he records all of his phone calls.

[On December 5, 2012, the Commonwealth charged Appellant with violating the Wiretap Act at 18 Pa.C.S.A. § 5703(1). This section provides that "a person is guilty of a felony of the third degree if he: (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication." 18 Pa.C.S.A. § 5703(1).]

. . .

On April 30, 2014, Appellant filed a *pro se* motion [for the trial court judge to] recuse. Therein, Appellant alleged that [the trial court judge could not] be impartial due to [Appellant's] filing of a *pro se* motion in a separate matter in which Appellant was a defendant. . . . On July 9, 2014, [the trial court judge] issued an order denying Appellant's motion to recuse. . . .

. . .

On June 9, 2015, [Appellant] filed [two pre-trial motions: a "Motion to Dismiss as *De Minimis* Pursuant to 18 Pa.C.S.A. § 312(a)" and a "Motion to Dismiss for Vindictive

- 3 -

Prosecution." Within Appellant's "Motion to Dismiss as *De Minimis* Pursuant to 18 Pa.C.S.A. § 312(a)," Appellant claimed] that the charges filed against him should be dismissed because there [was] no evidence to suggest that [he] disclosed the contents of any of the recorded telephone conversations or that he threatened or intended to disclose the contents of the telephone conversations. Finally, [Appellant claimed] that the recorded phone conversations relate[d] only to trivial and clerical matters and [did] not involve any personal details about the other party to the conversation. . . .

[Within Appellant's "Motion to Dismiss for Vindictive Prosecution," Appellant noted that, despite the fact that] the search warrant of Appellant's residence was executed on August 21, 2012[, the Commonwealth did not file charges against Appellant until December 5, 2012. Appellant also noted that,] on August 29, 2012, [he] filed a civil action in [the] Montgomery County Court of Common Pleas against several employees of the Montgomery County District Attorney's Office and other defendants relating to this matter. [Appellant claimed] that it was not until December 5, 2012, the day after counsel entered his appearance for the employees of the [District Attorney's] Office named as defendants in the civil action, that the Commonwealth filed the present charges against Appellant. Moreover, [Appellant claimed] that the Commonwealth's decision to file criminal charges against Appellant on December 5, 2012 was more likely than not motivated by vindictiveness in retaliation for his initiation of a civil action against employees of the [District Attorney's] Office.

[A hearing on] Appellant's motion to dismiss for vindictive prosecution was [held] prior to the start of the stipulated bench trial. . . . [During the hearing, the] Commonwealth presented the credible testimony of Detective Mitchell, the affiant in this case. Detective Mitchell testified that he first got involved in this case in August 2012 when he received several faxes in his office, addressed to him. The detective [testified] that in those faxes[,] Appellant made several complaints about issues with another case, and [Appellant] stated that he records his phone calls, has the phone calls on tape[,] and made duplicates of those phone recordings. Detective Mitchell explained that based upon this

- 4 -

information he next applied for a search warrant for [Appellant's] residence to recover recordings of illegally recorded phone conversations. . . .

The search warrant was executed on [August 21, 2012. Detective Mitchell testified] that the search uncovered several boxes of 120 cassette tapes that contained hundreds and hundreds of illegally recorded phone calls, as well as a phone recording [device] that was plugged into [Appellant's] phone line with a tape ready to record. Detective Mitchell explained that while the search warrant was executed in August [] 2012, an arrest warrant was not issued and a complaint was not filed for a period of three months thereafter because he had to examine the evidence. This entailed hours and hours of listening to the audiotapes, and determining who were on the audiotapes. Detective Mitchell also executed two other search warrants in that three month period for phone records for [Appellant's] residence for Comcast and Verizon. . . .

The detective also testified that at the time he filed the affidavit and obtained an arrest warrant [against Appellant,] he had no knowledge that he had been sued in civil court by Appellant. He had not received any notice in the mail about being sued by him. Also, no one else [that was] a member of either the Montgomery County Detective Bureau or the [District Attorney's] Office informed or indicated to him that he had been sued. Detective Mitchell unequivocally stated to [the trial c]ourt that he did not file the criminal complaint in this case against Appellant because he had been sued in civil court by [Appellant], nor did he file the complaint at anyone else's direction.

[The trial court denied both of Appellant's pre-trial motions to dismiss. Trial Court Order, 6/11/15, at 1.]

. . .

At the [] bench trial [on June 11, 2015,] Appellant testified on his own behalf. He admitted on direct examination that he did record his telephone conversations. However, he stated that he never disclosed the contents of any of these conversations to anyone and that he never threatened anyone or blackmailed anyone to disclose the contents of

the conversations. Further, upon questioning by his counsel as to why he recorded his conversations, Appellant [testified] as follows:

> I had an oral agreement, an employment contract after I sold the company in 2008, and the oral agreement was between somebody in the supplement industry that was president of the company, and I was president of the company. We were well known in the industry and I was told I could trust the man, and it made sense that we didn't have an employment agreement. I should have had an employment agreement, because he reneged on it and I lost about a quarter of a million dollars.
>
> From that and other things I contacted the [District Attorney's] Office for help. Actually, I think 129 contacts to everybody that matters, from the President of the United States to the local police force, a 1004 pages, and nobody replied. The District Attorney's Office, six times I asked them. And these are documents that would catch anybody's attention, and they didn't even reply.
>
> So I felt that I was on an island, so I had to keep my phone recorded. And it helped, it helped.
>
> . . .
>
> That was the only way I could protect myself. I went as far as threatening the [District Attorney's] Office to sue them if they don't help me, and they didn't reply to anything. It was beyond ludicrous. I contacted them on one matter six times, but in general about 200 times.

[N.T. Trial, 6/11/15, at 30-32.]

At the conclusion of the [June 11, 2015] trial, [the trial c]ourt found Appellant guilty [of violating the Wiretap Act at 18 Pa.C.S.A. § 5703(1). That same day, the trial court sentenced Appellant to serve] a one-year term of probation.

Trial Court Opinion, 8/14/15, at 1-5 (internal citations omitted).

Appellant filed a timely notice of appeal. Appellant raises three claims to this Court:

[1.] Whether the trial court erred in denying Appellant's motion to dismiss for vindictive prosecution?

[2.] Whether the trial court abused its discretion in denying Appellant's motion to dismiss as *de minimis* [Appellant's] violation of the Wiretap Act?

[3.] Whether the trial court abused its discretion in denying Appellant's motion for recusal without a hearing and without sufficient consideration and response to Appellant's allegations of bias?

Appellant's Brief at 4 (some internal capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable William R. Carpenter. We conclude that there has been no error in this case and that Judge Carpenter's opinion, entered on August 14, 2015, meticulously and accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Carpenter's opinion and adopt it as our own. In any future filings with this or any other court addressing this ruling, the filing party shall attach a copy of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/8/2016</u>

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :      CP-46-CR-0002821-2013

            V.            :

DOMENIC TRICOME           :      2131 EDA 2015

## OPINION

CARPENTER J.                        AUGUST 13, 2015

## FACTUAL AND PROCEDURAL HISTORY

Appellant, Domenic Tricome, appeals from the judgment of sentence imposed on June 11, 2015, after he was convicted of violating the Wiretap Act at 18 Pa.C.S.A. §5703(1), the intentional interception, disclosure or use of wire, electronic or oral communications, at a stipulated bench trial.

At the June 11, 2015 bench trial, Appellant stipulated to the following facts as set forth in the affidavit of probable cause, which were read into the record. On July 24, 2012, Appellant was arrested for terroristic threats and during the course of that arrest, Appellant had contact with Detective William Mitchell of the Montgomery County Detective Bureau. (Stipulated Bench Trial 6/11/15 pp. 23 - 24). On August 2, 2012, Magisterial Judge Maruszczak ordered Appellant to undergo a psychiatric evaluation by the Montgomery County Emergency Services ("MCES") and to follow their recommendations for treatment as a requirement of bail. Id. at 24. Appellant agreed to the bail

conditions. Id. MCES staff contacted Appellant and visited him to evaluate his mental status. Id. at 25.

On August 16, 2012, Detective Mitchell received a letter via fax to the Montgomery County Detective Bureau from Appellant. Id. Therein, Appellant claimed that he recorded the telephone conversations he had with MCES staff because he could not trust MCES or Detective Mitchell. Id. He specifically wrote, "I have the calls on tape". Id.

On August 17, 2012, Detective Mitchell received a subsequent letter from Appellant via fax. In this letter, Appellant makes the same accusations against MCES. Id. He claims that he can prove lies that were told about him with audiotapes of the telephone conversations between MCES staff and himself. Id. Appellant also related that he did not trust the District Attorney's Office or MCES, so he made duplicates of his tapes of the telephone conversations. Id. at 25 – 26.

After receiving the second letter, Detective Mitchell contacted MCES and spoke with Tyler Ludwig, the MCES member who had telephone conversations with Appellant pursuant to his bail conditions. Mr. Ludwig stated that he had several telephone conversations with Appellant to schedule a home visit as well as an evaluation for him with one of the doctors at MCES. Id. at 26.

During one of the conversations, Mr. Ludwig stated that Appellant told him that he was recording their conversation. Id. at 26. This statement was in the middle of their conversation. Mr. Ludwig did not consent to the recording of the conversation, nor did Appellant provide the appropriate warnings at the

2

beginning of the conversation. Id. Mr. Ludwig stated he never gave Appellant consent to record any conversation. Id.

On August 21, 2012, members of the Montgomery County Detective Bureau and the Upper Merion Police Department executed a search warrant at Appellant's apartment. Id. As a result of the search, 120 audiotapes were seized, along with computer hard drives and an audio recording device. A review of the audiotapes reveal hundreds of illegal, surreptitiously recorded conversations using Appellant's home telephone line. Id. at 26 – 27.

Detective Mitchell reviewed tapes one through 28, which date from January 2011 through August of 2012. During the months of January 2011 through March of 2011, a total of 153 calls were recorded. During the months of April 2011 through June 2011, a total of 38 calls were recorded. During the months of July 2011 through September 2011, a total of 37 calls were recorded. During the months of October 2011 through December 2011, a total of 31 calls were recorded. During the months of January 2012 through March 2012, a total of 41 calls were recorded. During the months of April 2012 through June 2012, a total of 41 calls were recorded. During the months of July 2012 through the execution of the search warrant on August 21, 2012, a total of 38 calls were recorded. Id. at 27 – 28. These recorded calls were made to various people, including Appellant's friends, apartment complex employees, law offices, various court personnel, pharmacy workers and various other individuals. Id. at 28.

On August 24, 2012, a hearing was held in the Montgomery County Court of Common Pleas at Appellant's request. During the hearing Appellant made an unsolicited statement that he "records all of his calls." Id. Appellant also admitted in briefs to the Court that he records all of his phone calls. Id.

At the stipulated bench trial, Appellant testified on his own behalf. He admitted on direct examination that he did record his telephone conversations. Id. at 30. However, he stated that he never disclosed the contents of any of these conversations to anyone and that he never threatened anyone or blackmailed anyone to disclose the contents of the conversations. Id. Further, upon questioning by his counsel as to why he recorded his conversations, Appellant stated as follows:

> I had an oral agreement, an employment contract after I sold the company in 2008, and the oral agreement was between somebody in the supplement industry that was president of the company, and I was president of the company. We were well known in the industry and I was told I could trust the man, and it made sense that we didn't have an employment agreement. I should have had an employment agreement, because he reneged on it and I lost about a quarter of a million dollars.
>
> From that and other things I contacted the DA's Office for help. Actually, I think 129 contacts to everybody that matters, from the President of the United States to the local police force, a 1004 pages, and nobody replied. The District Attorney's Office, six times I asked them. And these are documents that would catch anyone's attention, and they didn't even reply.
>
> So I felt I was on an island, so I had to keep my phone recorded. And it helped, it helped.

***

4

That was the only way I could protect myself. I went as far as threatening the DA's Office to sue them if they don't help me, and they didn't reply to anything. It was beyond ludicrous. I contacted them on one matter six times, but in general about 200 times.

Id. at 30 – 32.

At the conclusion of the trial, this Court found Appellant guilty, and sentenced him the same day to a one-year term of probation. Id. at 44.

## ISSUES

I.  Whether this Court properly denied Appellant's motion to dismiss for vindictive prosecution.

II.  Whether this Court properly denied Appellant's motion to dismiss as *de minimis*.

III.  Whether this Court properly denied Appellant motion for recusal without a hearing.

## DISCUSSION

I.  This Court properly denied Appellant's motion to dismiss for vindictive prosecution.

First on appeal, Appellant argues that this Court erred in denying his motion to dismiss for vindictive prosecution.

On June 9, 2015, defense counsel filed the motion to dismiss for vindictive prosecution. Therein, it was alleged that despite that the search warrant of Appellant's residence was executed on August 21, 2012, no charges were filed in August, September, October or November of 2012. See, Motion for Vindictive Prosecution 6/9/15 ¶¶ 1, 3. It was also alleged that on August 29, 2012, Appellant filed a civil action in Montgomery County Court of Common Pleas against several employees of the Montgomery County District Attorney's

5

Office and other defendants relating this this matter. Id. at ¶4. It is further alleged that it was not until December 5, 2012, the day after counsel entered his appearance for the employees of the D.A's Office named as defendants in the civil action, that the Commonwealth filed the present charges against Appellant. Id. at ¶¶ 5 -8. Moreover, it is alleged that the Commonwealth's decision to file criminal charges against Appellant on December 5, 2012 was more likely than not motivated by vindictiveness in retaliation for his initiation of a civil action against employees of the D.A.'s Office. Id. at ¶ 12.

Appellant's motion to dismiss for vindictive prosecution was heard prior to the start of the stipulated bench trial. This Court heard testimony on the matter.

The Commonwealth presented the credible testimony of Detective Mitchell, the affiant in this case. Detective Mitchell testified that he first got involved in this case in August 2012 when he received several faxes in his office, addressed to him. (Stipulated Bench Trial 6/11/15 p. 8). The detective stated that in those faxes Appellant made several complaints about issues with another case, and he stated that he records his phone calls, has the phone calls on tape and made duplicates of those phone recordings. Id. Detective Mitchell explained that based upon this information he next applied for a search warrant for his residence to recover recordings of illegally recorded phone conversations. Id. at 9. The search warrant was executed on August 21st. Id. The detective testified that the search uncovered several boxes of 120 cassette tapes that contained hundreds and hundreds of illegally recorded phone calls,

6

as well as a phone recording devise that was plugged into his phone line with a tape ready to record. Id. Detective Mitchell explained that while the search warrant was executed in August of 2012, an arrest warrant was not issued and a complaint was not filed for a period of three months thereafter because he had to examine the evidence. Id. This entailed hours and hours of listening to the audiotapes, and determining who were on the audiotapes. Id. Detective Mitchell also executed two other search warrants in that three month period for phone records for his residence for Comcast and Verizon. Id. at 9 - 10. The detective also testified that at the time he filed the affidavit and obtained an arrest warrant he had no knowledge that he had been sued in civil court by Appellant. Id. at 10. He had not received any notice in the mail about being sued by him. Id. Also, no one else that's a member of either the Montgomery County Detective Bureau or the D.A.'s Office informed or indicated to him that he had been sued. Id. Detective Mitchell unequivocally stated to this Court that he did not file the criminal complaint in this case against Appellant because he had been sued in civil court by him, nor did he file the complaint at anyone else's direction Id. at 10 - 11.

After the detective's testimony, this Court heard argument from both defense counsel and the Commonwealth. Id. at 15. At the conclusion of this Court denied the motion.

There are two distinct situations in which the appearance of vindictiveness may require inquiry and judicial intervention. The first is where a prosecutive decision is based on discriminatory grounds of race, religion,

7

national origin or other impermissible classification. The other situation is where the accused is treated more harshly because he has successfully exercised a lawful right. Commonwealth v. Rocco, 544 A.2d 496, 498 (Pa.Super. 1988).

Presumption of prosecutorial vindictiveness arises, which Commonwealth must rebut with evidence of legitimate explanation for challenged conduct, if defendant establishes facts which demonstrate probability that adverse action by prosecution or court has been motivated by vindictiveness in retaliation for successful exercise of defendant's legal rights rather than for some other legitimate cause; key to whether presumption arises in given case would be factual circumstances in which challenged action occurred. Id.

Here, Appellant alleged in his motion that a criminal complaint was filed in this case in retaliation of his filing of a civil action against certain employees of the D.A.'s Office. This allegation falls into the category that Appellant, as the accused, was treated more harshly because he has successfully exercised a lawful right. Based upon this allegation, this Court conducted a hearing in which the Commonwealth presented the testimony of Detective Mitchell, who this Court deemed to be credible. Based upon the facts adduced at this hearing and the credibility determination, this Court properly concluded that the criminal charges that were filed were not related in any way to the civil action and that Appellant was not treated more harshly because of the civil action. The criminal charges flowed from Appellant's own spontaneous

8

admissions, a valid search warrant and the recovered tapes and recording device found pursuant to the search. Additionally, the facts established that the detective was unaware of the civil action at the time the criminal complaint was filed, and the issue of the civil action was never raised in the discussions about the criminal charges that occurred prior to the filing of the criminal complaint. (Stipulated Bench Trial 6/11/15 p. 14 – 15). Therefore, despite the timing of the filing of the criminal complaint, the two were unrelated.

II.    This Court properly denied Appellant's motion to dismiss as *de minimis.*

Next, Appellant contends that this Court abused its discretion in denying his motion to dismiss as *de minimis* the violation of 18 Pa.C.S.A. §5703(1), relating to interception of wire communications.

On June 9, 2015, defense counsel filed a motion to dismiss as *de minimis* pursuant to 18 Pa.C.S. §312(a), alleging therein that the charges filed against him should be dismissed because there is no evidence to suggest that Appellant disclosed the contents of any of the recorded telephone conversations or that he threatened or intended to disclose the contents of any of the telephone conversations. See, Motion to Dismiss as De Minimis 6/9/14 ¶¶5, 6. Finally, it is alleged that the recorded phone conversations relate only to trivial and clerical matters and do not involve any personal details about the other party to the conversation. Id. at ¶7.

While a trial court may, in the exercise of its discretion, dismiss petty or *de minimus* infractions of criminal law, dismissal of charges as petty is limited to situations where no harm was done to a victim or society, and "it is

9

incumbent upon the trial court not to dismiss criminal conduct that is injurious to the victim or to society." Commonwealth v. Beck, 810 A.2d 736, 746 (Pa.Super. 2002). Section 312 of the Crimes Code provides in relevant part the following:

### § 312. De minimis infractions

(a) General rule.--The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a).

This Court determined based upon Appellant's own testimony that he was taping all of his telephone conversations to protect himself in some way, his intention was to use the recordings in some manner at some place or time. The Wiretap Act is meant to protect privacy, the very thing Appellant violated by surreptitiously recording his conversation with Mr. Ludwig. This crime is not *de minimis*.

10

III. **This Court properly denied Appellant motion for recusal without a hearing.**

Third on appeal, Appellant asserts that this Court abused its discretion in denying his motion for recusal without a hearing and without sufficient consideration and response to his allegations of bias.

On April 30, 2014, Appellant filed a *pro se* motion to recuse. Therein, Appellant alleged that the undersigned cannot be impartial due to his filing of a *pro se* motion in a separate matter in which Appellant was a defendant at docket CP-46-CR-0005855-2012[1], entitled "Motion for Judgment of Acquittal, Which Also Represents A Motion for Referral from Criminal Investigation of Presiding Judge William Carpenter, District Attorney's Office, Ethan Barlieb, Douglas Rosenblum and Public Defender's Office", attached to

---

[1]     For the purpose of clarity and understanding, the factual and procedural background of Common Pleas docket 5855-2012, as set forth by the Pennsylvania Superior Court memorandum decision dated January 12, 2015, 1581 EDA 2014, is as follow:

> On July 21, 2012, Tricome sent Ethan Barlieb, Esq., a threatening voicemail message. At that time, Barlieb was an attorney who represented an opposing party in a civil lawsuit between Tricome and his former business partner. Tricome's July 21, 2012 voicemail provided as follows: "Hey you fucking coward. I sued ya. You're lucky I didn't put a bullet in your head. You fucking piece of shit, pussy. You're dead. You're fucking dead. You better hope that you go to jail, pussy." Trial Court Opinion ("T.C.O."), 7/2/2014, at 2. On July 23, 2012, Barlieb contacted Detective Dirk Boughter of the Montgomery County Detective Bureau (the investigative branch of the Montgomery County District Attorney's Office), who identified Tricome as the source of the threatening message.
>
> On July 24, 2012, Tricome was arrested and charged with terroristic threats and harassment.1 On January 8, 2014, a jury found Tricome guilty of those offenses. At his sentencing hearing on April 9, 2014, Tricome informed the court that he wanted to represent himself both at sentencing and on appeal, and signed a written waiver-of-counsel colloquy. The trial court then sentenced Tricome to a two-year term of probation.

11

the motion to recuse as Exhibit "A." In Exhibit "A", Appellant asserts numerous allegations against many people and in part against the undersigned that occurred in that separate matter for which Appellant was eventually convicted of harassment. On June 4, 2014, Appellant filed an Addendum to Motion to Recuse, alleging bias against him stating, "...presiding Judge William Carpenter is bias against defendant() (sic), and possibly, presiding Judge William Carpenter is trying to get the Defendant convicted to protect lawyers, who the Defendant sued, and who perjured in Docket No. CP-46-CR-0005855-2012 (Commonwealth v. Tricome)..." See, Addendum to Motion to Recuse 6/4/14 p. 3, ¶5.

On July 9, 2014, this Court issued an order denying Appellant's Motion to Recuse. In addition, on November 13, 2014, this Court issued an order setting forth reasons why the Motion to Recuse was denied on July 9, 2014 as follows:

1. There is no doubt that the Defendant will be given a fair trial by an impartial judge.

2. Defendant's Motion was filed in bad faith as an attempt to avoid going to trial (he succeeded in getting the previously assigned judge to recuse.)

3. The facts and circumstances here could not engender on reasonable minds the belief that recusal should be required.

4. Neither could a significant minority of the community reasonably question the court's impartiality.

5. There is no substantial question in reasonable minds that recusal should be required.

12

Our Superior Court has set forth the standard to apply when addressing a recusal motion as follows:

> If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This assessment is a personal and unreviewable decision that only the jurist can make....
>
> This Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

Commonwealth v. Druce, 848 A.2d 104, 108 (2004) (quotations, quotation marks, citations omitted).

In this case, my independent, self-analysis absolutely and without a doubt determined that I have the ability to be impartial regardless of Appellant's filings in Common Pleas docket, 5855-2012. Appellant has filed many filings against a variety of actors from the Montgomery County D.A.'s Office, the undersigned, the Montgomery County Public Defender's Office, the victim at Common Pleas docket, 5855-2012, Ethan Barlieb, among others, alleging conspiracies and unequal treatment and even perjury. Regardless of

13

this, Appellant has not been treated any differently than any other defendant that appears before me. In addition, my continued involvement in this case does not create an appearance of impropriety as there is nothing different in how I have handled this case compared to any other I have adjudicated. Based upon the reasons set forth in the order dated November 13, 2014 and for those just expressed, the motion to recuse was properly denied. In addition, there was no need for a hearing in order to conduct my independent analysis, or to hear evidence on Appellant's subjective allegations of a conspiracy.

CONCLUSION

Based on the forgoing analysis, the judgment of sentence imposed on June 11, 2015, should be affirmed.

BY THE COURT:

WILLIAM R. CARPENTER     J.
COURT OF COMMON PLEAS
MONTGOMERY COUNTY
PENNSYLVANIA
38TH JUDICIAL DISTRICT

**Copies sent on August 13, 2015**
**By Interoffice Mail to:**
Court Administration

**By First Class Mail to:**
Brooks T. Thompson, Esquire

14